STATE OF MINNESOTA *ex rel.* Warren Smith *vs.* EDGAR CRONKHITE.

July 28, 1881.

**Refunding of Purchase-money on Void Tax Sale.**—Gen. St. 1878, *c.* 11, § 97, which provides that " in all cases where any [tax] sale has been or hereinafter [hereafter] shall be so declared void, the money paid by the purchaser at the sale  *  *  *  shall, with interest at the rate of twelve per cent. per annum from the date of such payment, be returned to the purchaser or assignee, or the party holding his right, out of the county treasury, on the order of the county auditor," *held,* to apply to a case where the sale was made prior to the date of the passage of the statute, but the judgment declaring it void was rendered subsequently.

**Same—Validity of Act.**—The provision requiring the whole amount to be refunded out of the county treasury is not in violation of section 1, article 9, of the state constitution, which requires that " all taxes to be raised in this state shall be as nearly equal as may be."

Appeal by defendant from an order of the district court for Waseca county, *Buckham,* J., presiding, directing the issue of a peremptory writ of *mandamus.*

*M. D. L. Collester,* for appellant.

*Lewis & Leslie,* for respondent.

MITCHELL, J.  This is an appeal from an order of the district court directing the issuing of a peremptory writ of *mandamus* to appellant, as auditor of Waseca county, to compel him, as such auditor, to issue to respondent, pursuant to the provisions of Laws 1878, *c.* 1, § 97, (Gen. St. 1878, *c.* 11, § 97,) an order on the county treasury of said county for the amounts paid by him or his assignors into the county treasury, at the tax sales of a certain tract of land in said county for the taxes for the years 1862 to 1875, inclusive, all of which taxes and tax sales had been duly declared void, by judgment of court duly rendered, for the reason, stated in said judgment, that said land was, during all these years, United States land, and not subject to taxation.  The tax sales thus declared void took place in the years 1863 to 1876, inclusive.  The judgment declaring them void was rendered October 30,

1880. The order appealed from was made on the 8th of December, 1880.

Appellant expressly waives any questions as to whether *mandamus* is the proper remedy in such a case, and rests his opposition to the issuing of the writ solely upon two grounds, which will now be considered: *First*, that the provisions of Laws 1878, *c.* 1, § 97, (Gen. St. 1878, *c.* 11, § 97,) only apply (1) to sales made and already declared void by judgment of court prior to the passage of the act; and (2) to sales made subsequent to the passage of the act; but that they do not apply to a case like the present, where the sale was made *prior*, but the judgment declaring it void rendered *subsequent*, to the date of the act.

The statute cited reads as follows: "When a sale of lands, as provided in this act, is declared void by judgment of court, the judgment declaring it void shall state for what reason such sale is declared void. In all cases where any sale has been or hereinafter [hereafter] shall be so declared void, the money paid by the purchaser at the sale, or by the assignee of the state upon taking the assignment, shall, with interest at the rate of 12 per cent. per annum from the date of such payment, be returned to the purchaser or assignee, or the party holding his right, out of the county treasury, on the order of the county auditor." The whole argument of appellant in support of his position hinges upon his assumption that the words "so declared void" refer exclusively to sales made subsequent to and under the act, and thereafter declared void as prescribed in the first clause of the section. We think any such construction of the act is untenable. No possible reason can be suggested why the legislature should leave a class of cases like the present unprovided for. Similar statutes for the protection of purchasers at tax sales had been in force for years, broad enough to cover all such cases, and it can hardly be supposed that, by re-enacting in substance an existing law, the legislature designed to omit from its benefits any such class of cases without any conceivable reason for so doing. It would have to appear clearly that such was the expressed intent of the act before a court would feel bound to give it any such consideration. But we

think the language of the act will not reasonably admit of the construction claimed. The first clause of the section simply provides what shall be the form of any judgment thereafter to be rendered declaring void a sale of land for taxes. The second clause is a general provision for the reimbursement of all purchasers at tax sales declared void by judgment of court. Its language is broad and comprehensive, and covers every tax sale declared void by judgment of court, without regard to whether the sale was made before or after the passage of the act, or whether such judgment was rendered prior or subsequent to that date. The words "so declared void" simply mean declared void by judgment of court, without reference to the date of the sale or the date of the judgment.

The *second* objection urged to the issuing of the writ is that this statute is in conflict with section 1, article 9, of the state constitution, which requires that "all taxes to be raised in this state shall be as nearly equal as may be." It is urged that, by requiring the whole amount to be refunded out of the county treasury, without making any provisions for charging back any part of it (except the state tax) to the municipal bodies to which the county has paid it over, and thus leaving the whole loss to be sustained by the county, the act in question necessarily produces inequality of taxation. This assumes that, as the law then stood, without any express provision authorizing such action, the county had no right to charge back any part of the amount to the municipal bodies who had the benefit of the proceeds of the tax sale. On this question we find it unnecessary to express an opinion. The law-officer of the state has decided that the county had this right. Opinion of Attorney-General, March 8, 1880.

But assuming that the county has no such right, we are still of opinion that this statute is not in conflict with the constitutional provision referred to. The power to declare a legislative enactment unconstitutional is one which a court ought never to exercise, except in a very clear case. This is especially true in a case where a law is claimed to be in conflict with any constitutional limitation upon the legislative power of taxation. While equality, as near as may be, is required in the distribution of the public burdens, yet the course to

be pursued and the means to be used under this rule must, necessarily, be largely left to the discretion of the legislative branch of the government. Absolute equality is neither required nor practicable. The legislature cannot be tied down to any narrow or technical rule. True, they would have no right to impose a burden exclusively upon one section of the state for the exclusive benefit of another section, but, within certain reasonable limits, they must necessarily be allowed a large discretion in determining both what shall be a public burden, and what district shall bear it. The mere fact that their decision may ultimately or indirectly result in a certain degree of inequality in the distribution of public burdens, will not warrant a court in holding their acts unconstitutional. If so strict a rule were to obtain, it would be absolutely impossible to frame any law to raise public revenue that would stand the test.

Many of the legislative appropriations of money out of the state treasury, collected from the state at large, are made for the more especial benefit of a particular section. The same is true of money expenditures by counties and other municipal divisions of the state. This results to a certain extent in an unequal distribution of public burdens, and in inequality of taxation. But who would claim that this fact necessarily rendered such acts unconstitutional? Now, when a tax sale has been declared void, a moral if not a legal obligation arises to refund the purchaser's money, because it has been decided that the public had no right to receive it. It would be a very inadequate remedy to remit the purchasers for redress to the several fragmentary subdivisions of the county among which the money has been distributed. The county, as a whole, has almost the entire control of the machinery of the laws for the collection of taxes and the sale of lands for delinquent taxes. If a tax sale is adjudged void, it must usually be the result of some default on the part of the county officers. Under the statute the county receives some equivalent for the services of the officers in attending to these matters, and for any responsibility or liability which she incurs in the premises. All the interest and penalties accruing on lands bid in for the state before redemption or assignment go into the general county fund.

Moreover, if the burden of reimbursing purchasers at tax sales, afterwards declared void, be imposed upon the county at large, in the course of years it would work out practical equality of taxation. Now, it is the province of the legislature to determine that this duty of reimbursing purchasers at these tax sales shall be a public burden, and, within certain reasonable limits or restrictions, to determine what territory shall bear this burden. It would be impossible, as well as inexpedient, to lay down any general rule that would attempt to define these limitations or restrictions, or to define what degree of inequality in the distribution of public burdens would render a law unconstitutional; but, in view of all the circumstances suggested above, we are clearly of opinion that the law under consideration does not transcend the constitutional powers of the legislature.

Another argument in favor of the validity of this law is to be found in the long-established legislative and popular construction of the constitution favorable to the validity of similar enactments. A very similar law was found upon the statute book at the date of the adoption of the constitution. It was in substance re-enacted in 1860, and in some form has been in force almost continuously ever since, and has been universally acted upon and acquiesced in as valid. Such a practical construction, adopted and followed by the people, as well as the legislature, for nearly a quarter of a century, is entitled to great weight with courts, and should not be lightly disregarded by them.

Order affirmed.