STATE OF MINNESOTA *ex rel.* O. P. MILLER *vs.* CHARLES S. BRUCE, County Auditor.

Argued June 8, 1892.   Decided July 14, 1892.

**Laws 1891, ch. 6, Unconstitutional.**

> Laws 1891, ch. 6,—an act which requires that under certain circumstances moneys paid by purchasers at tax sales of the lands therein mentioned be refunded by the counties in which the lands are situated,—is unconstitutional and void in so far as it relates to so called "school lands."

Appeal by Charles S. Bruce, as County Auditor of the county of Rock, State of Minnesota, from an order of the District Court of Rock County, *Cadwell*, J., made October 28, 1891, denying his motion to quash the alternative writ of mandamus.

The relator, O. P. Miller, on September 20, 1880, purchased certain school lands at a sale of the same for delinquent taxes.   On June 1st of each of the succeeding years, he paid the taxes about to become delinquent on the lands, amounting in the aggregate to the sum of $963.17.   The original owners of the state certificates for the school lands (1878 G. S. ch. 38) failed to redeem from the tax sale of 1880, and failed to pay the state the annual interest due from them June 1, 1880, or the interest thereafter falling due, and the lands were declared forfeited to the state.   1878 G. S. ch. 38, §§ 9, 19.   Miller made no effort to be substituted in place of the original purchasers from the state, and on May 1, 1883, the land commissioner resold the lands to strangers.   Under Laws 1889, ch. 187, Miller surrendered his certificates of purchase at the tax sale and

received out of the county treasury the amount paid for the same. Laws 1891, ch. 6, provides that when any state school, indemnity school, agricultural college, state university, or internal improvement lands, have been sold for taxes and no redemption made from such sale, but by reason of the non-payment of principal or interest due on said lands to the state, the state auditor has declared the lands forfeited to the state, the purchaser at the tax sale may, upon surrender of his certificate of tax purchase to the county auditor, together with a certificate from the state auditor showing that the lands have become forfeited to the state by the purchaser, receive from such county auditor an order on the county treasurer for the amount paid at said delinquent tax sale, together with the amount of all taxes paid on said land by the said purchaser subsequent to the purchase of such tax sale certificate. Under this law, Miller, presenting the proper certificates, demanded of the county auditor an order on the county treasurer for the amount of the taxes paid by him on said lands for the years 1880, 1881 and 1882. The county auditor refused to give Miller the order, and on September 15, 1891, Miller petitioned for, and was granted, an alternative writ of mandamus, by the District Court of Rock County, commanding Charles S. Bruce, as county auditor of Rock County, to issue an order as such auditor to said Miller for the amount of the taxes so paid by him, or show cause to the contrary. The auditor moved to set aside and quash the alternative writ, on the ground that Laws 1891, ch. 6, was unconstitutional and void. The motion was denied by the court, October 28, 1891, and the auditor appealed to this court.

*E. H. Canfield,* for appellant.

The purchaser at a tax sale of school lands, acquires the title of the holder of the certificate, and the right to be substituted in his place. He may protect his title by paying the installments of interest as they become due. 1878 G. S. ch. 38, § 21. The relator knew that he was a purchaser subject to a prior lien which he must either pay, or lose the land. He received full value for his money and lost the lands through his own fault.

While the powers of the legislature over municipal corporations are very great, the property which they are given the capacity to acquire for corporate purposes cannot be taken from them and applied to other purposes. Cooley, Const. Lim. 289. The true rule is that if there is an equitable or moral claim against a county or other municipality, the legislature may pass a law directing its payment, even though there may be no remedy at law or in equity. *Fuller* v. *Morrison County,* 36 Minn. 309; Cooley, Tax'n, 283, note 2; *Town of Guilford* v. *Supervisors, etc.,* 13 N. Y. 143; *O'Hara* v. *State,* 112 N. Y. 146; *Cole* v. *State,* 102 N. Y. 48; *Mayor,. etc.,* v. *Tenth Nat. Bank,* 111 N. Y. 446; *Creighton* v. *Board, etc., of San Francisco,* 42 Cal. 446. But in all these cases, there was some equitable or moral obligation on the part of the municipality to pay the amount; some benefit or consideration was received by the county or the public. None of the cases go further than this, and the rule is in most of them expressly limited to this extent. *New Orleans* v. *Clark,* 95 U. S. 644; *State* v. *Foley,* 30 Minn. 350.

This law was not called for upon any ground of equity or morals. The relator paid the taxes and got his land. He lost it through his own default, and to refund the taxes is a simple gratuity. "A legislative decree that the property of a county, acquired and held by it for its own general benefit, shall be gratuitously bestowed upon any person or class of persons, is not legislation; it has been defined to be a decree under legislative forms." Cooley, Const. Lim. 332, 587, 599, 601; *Brodhead* v. *City of Milwaukee,* 19 Wis. 624.

*A. J. Daley, (E. Y. Greenleaf,* of counsel,) for respondent.

The unconstitutionality of a law must be very clear to justify a court in pronouncing it void. *State* v. *Cronkhite,* 28 Minn. 197. This is especially true in cases of laws in relation to taxation, or regulating municipal corporations. The legislature is not confined in its appropriations of public moneys to cases where a legal or equitable demand exists. It can recognize claims founded on justice and equity in the largest sense of these terms. *Town of Guilford* v. *Supervisors, etc.,* 13 N. Y. 149; *People* v. *Haws,* 34 Barb. 69; *Brewster* v. *Syracuse,* 19 N. Y. 116; *State* v. *Harris,* 17 Ohio St. 608.

Relator's claim is based on equity and a good consideration. Rock County received his money, and has had the use of it without interest. The money was paid for certificates of tax sales that were valueless because the state declared the lands forfeited. It is true that relator had the remedy of paying to the state the interest on the lands and preventing the forfeiture, but the legislature might change his remedy and refund to him the taxes. *Tennessee* v. *Sneed*, 96 U. S. 69. The practice of the officers before the law was passed of refunding taxes in these cases, relied upon by the relator, raises a moral obligation sufficient to support the law.

COLLINS, J. On September 20, 1880, this relator became the purchaser of certain " school lands," so called, at a sale of the same for delinquent taxes, thereby acquiring, (1878 G. S. ch. 38, § 21,) in case no redemption was made, the rights and interests of the parties who had previously obtained state certificates in the manner prescribed in sections 7 and 8 of said chapter. On the 1st day of June of each of the three succeeding years he paid the taxes about to become delinquent on the lands, taking the usual receipts from the county treasurer; thus paying the taxes for the years 1880, 1881, and 1882. The original holders and owners of the state certificates failed to redeem from the tax sale of 1880, and neglected to pay to the state the annual interest due from them on June 1, 1880, or the interest thereafter falling due; thus forfeiting all claims to the land. Sections 9, 19. The relator made no effort to be substituted in place of the original purchasers from the state, and on May 1, 1883,—more than two and a half years after the tax-sale certificates were obtained,—the land commissioner resold the lands to strangers to these transactions. After the enactment of Laws 1889, ch. 187, relator surrendered his certificates, receiving out of the county treasury the amount paid for the same, and, under the provisions of Laws 1891, ch. 6, he now demands the sums of money paid by him as taxes subsequent to the purchase of the tax-sale certificates. The question presented is the constitutionality of the act of 1891. This involves a consideration of the power of the legislature to control, dispose of, and summarily deprive a municipal corporation of the

funds which it has already acquired by lawful means and for legitimate purposes, the inevitable result of such legislation being further and increased taxation of the people, that the funds thus diverted and disposed of may be restored and replaced in the municipal treasury. The validity of legislation of this same general character is not altogether a new question in this court, and while it has heretofore been admitted that the legislative control and power over towns, cities, and counties, and consequently over their property and funds, is very great, it has not by any means been conceded that this control and power are without limit, or so transcendent that the lawmakers may arbitrarily take away the private property of a municipality, or, at will, appropriate or direct to be used its lawfully acquired private funds to liquidate a claim which it did not owe in any just sense, and was not morally or equitably bound to pay. It was well said in *State* v. *Foley*, 30 Minn. 350, (15 N. W. Rep. 375,) that a legislative enactment that the property of a county, acquired and held by it for its own general benefit, shall be gratuitously bestowed upon any person or class of persons is not legislation, but has been defined as a decree under legislative forms. If, then, the payment provided for be a pure gratuity,—a taking of the money of the municipality in order that it may be given to a private person,—the legislation which requires it cannot be upheld. But the distinction between valid and invalid legislation on this subject has been pointed out many times, and it is well settled that, if there rests upon the designated municipality any obligation or duty, moral or equitable, (using these words in a large and popular sense,) to pay the claim, then a legislative act requiring its payment is supported as valid by the great weight of authority. *Coles* v. *Washington Co.*, 35 Minn. 124, (27 N. W. Rep. 497;) *State* v. *Foley, supra*, and cases cited. As the legislature possesses the constitutional power to compel a municipal corporation, out of funds in its treasury, or by means of taxes imposed for that purpose, to meet and discharge a claim which in good conscience it ought to pay, although no legal liability has previously existed, it simply remains for us to discover and determine whether there rested at any time upon the county, or upon the state, for that matter, a moral or equitable ob-

ligation or duty to refund the amounts paid by the relator. If not, a pure gratuity was conferred on him and on others similarly situated, by the act of 1891, and its invalidity becomes palpable. The distinction between the case at bar and those in which the power of the legislature to determine upon the necessity of a public improvement, and to direct that it be made and paid for by particular municipalities,—*Guilder* v. *Otsego*, 20 Minn. 74, (Gil. 59,)—and those, also, in which there has been considered the constitutionality of various provisions of the tax laws requiring counties to reimburse purchasers at tax sales in case such sales are declared void by the courts, —*State* v. *Cronkhite*, 28 Minn. 197, (9 N. W. Rep. 681;) *Coles* v. *Washington Co., supra; Schoonover* v. *Galarnault,* 45 Minn. 174, (47 N. W. Rep. 654,)—usually because of some default on the part of the county officers, is easily perceived. The distinction is made plain, we think, in the *Foley Case.* In this case it must be presumed that the tax proceedings which resulted in the sales to relator were regular and valid, and that, upon the expiration of the period of redemption, his rights, as prescribed by statute, became fixed and definite. Having purchased at the delinquent sale, and thereafter paid the yearly taxes, he acquired the right—which was part of the contract, being a provision of the law when he bought—to succeed by substitution to such title and interest in the lands as had been acquired by the original purchasers, whatever it might be. Their payments to the state, whether great or small, inured to his benefit, and upon a proper showing to the state auditor he was authorized to step into their shoes, and complete their purchases for himself. This was the situation for more than six months prior to the resales before mentioned, and the privilege and opportunity seem to have been voluntarily disregarded and abandoned. The purchaser at tax sales of the common and ordinary class of lands is simply assured that, in case such sales are declared void in judicial proceedings, his money shall be refunded. If the proceedings are regular, and the time for redemption expires unheeded, the purchaser acquires a title as against the original owner. But at all times he must see to it that no other person secures a tax title more recent than his own. By virtue of his purchase at the sale he obtains certain statutory

rights. He may protect himself by paying the annual taxes as they become delinquent, and he may also redeem within the time provided by law, should there be a subsequent purchaser; the amount so paid being tacked on to his original claim. If, however, he suffers a later tax title to ripen, and cut him out, we apprehend that no one would urge that there rested upon the county in which the land was located, or on the state, any moral or equitable obligation or duty to return the money invested,—and lost by neglect or disregard of a statutory privilege,—should a legislature enact a law directing a return under such circumstances. And yet the case would be analogous to that in hand.

The relator, under the existing law, was entitled to a refundment of his money, as were all other purchasers at the sale, in case the judgment under which he purchased was adjudged void. In addition to this right, common to all purchasers, he was in a position, no redemption being made, to secure property rights of more or less value, depending upon what had theretofore been paid to the state. That he did not ultimately secure all that he might have had, because he omitted to make proper application and payment to the state auditor, cast no more of an obligation or duty upon the county or upon the state to reimburse him than would have been cast had he allowed other tax-sale certificates to supersede those held by him. By his own default he lost the amount of his investments; not by reason of any neglect or omission of the county officers. By means of the act of 1891, the legislature simply appropriated funds already in the county treasury to a private purpose, in which neither county nor state had any interest, and in respect to which there existed no obligation, legal, equitable, or moral, upon either county or state. Much that was said in the *Foley Case* in respect to the invalidity of that portion of Laws 1881, ch. 10, which increased the rate of interest, can be applied here, for the controlling principles are the same. We are obliged to hold that, in so far as they relate to school lands, the provisions of Laws 1891, ch. 6, are unconstitutional and void.

The case is remanded, with directions that the alternative writ be quashed and set aside, as demanded by defendant, county auditor.

(Opinion published 52 N. W. Rep. 970.)