W. G. CALDERWOOD v. JOS. SCHLITZ BREWING COMPANY and
Another.[1]

April 30, 1909.

Nos. 15,867—(146).

### Action to Recover License Money Refunded—Curative Act.

Plaintiff, a taxpayer, sought to recover from defendant brewing company judgment in favor of defendant city for money alleged to have been taken illegally by city officials from its funds and paid to respondent brewing company. Under an ordinance alleged to have been invalid, the owner of a liquor license was permitted to surrender it and to have it revoked by public officials; and upon such revocation the owner became entitled to have returned to him the proportionate part of the fee which had been paid for the license corresponding to the unexpired term. The refunded moneys were paid to the defendant brewing company, pursuant to written power of attorney, signed by the license owner, or to oral authority given by him. Upon the assumptions that the ordinance was invalid, and that no estoppel prevented the restoration to the city of refundments actually paid, it is *held* that:

1. The appeal should be determined upon the merits, notwithstanding objections to assignments of error not entirely technical.

2. A subsequent curative act, which provided that "in all cases where the officers of any city in this state having a population of over fifty thousand inhabitants have heretofore in good faith paid out public moneys to any person whose license to sell intoxicating liquors in such city has been revoked, or to his assigns, for the purpose of refunding to such person, or his assigns, any portion of the fee paid for such license, such payments are hereby in all respects validated and legalized," was not invalid as special legislation. State v. Brown, 97 Minn. 402, followed and applied.

3. That curative act was valid within the rule that, unless there be a constitutional inhibition or an interference with a vested right, the legislature has power to validate invalid contracts or ratify and confirm any act it might lawfully have authorized in the first place.

Here the power of the legislature to legalize was the same as its unquestionable power to have originally authorized; the city had received an exact equivalent in cash for the transaction legalized; and no vested right was impaired.

[1] Reported in 121 N. W. 221.

107 M.—30

4. The findings of the trial court brought this case within the terms of the act, and showed good faith on the part of the city officers who had "paid out public moneys" to persons there designated in accordance with its requirements.

Action in the district court for Hennepin county against defendant brewing company and the city of Minneapolis to recover $26,511.17 for money alleged to have been illegally refunded by defendant city to defendant brewing company on account of unexpired liquor licenses. The defenses alleged are stated in the third paragraph of the opinion. The case was tried before Holt, J., who made findings and ordered judgment in favor of defendants. From the judgment entered in favor of defendant brewing company, plaintiff appealed. Affirmed.

*Charles W. Purple* and *Frank W. Booth,* for appellant.

*Welch, Hayne & Hubachek* and *Frank J. Geist,* for defendant brewing company.

*Frank Healy,* for city of Minneapolis.

JAGGARD, J.

Plaintiff and appellant, as a taxpayer, demanded judgment against respondent brewing company, and in favor of defendant city of Minneapolis, for money taken illegally by the city officials from the funds of the city and paid to respondent brewing company. In April, 1889, the city passed an ordinance to license and regulate persons dealing in intoxicating liquors. Of this ordinance section 12 provided in effect that every license was granted with the distinct understanding that it could be forfeited by the mayor and city council at any time, and by the court upon conviction of a violation thereof by the holder; that the city should refund to the holder "one-half the fee corresponding to the unexpired term" in the event of revocation by mayor or council; and that the whole sum should be forfeited in case of revocation by the court. In 1892 this was amended to provide that on revocation the full amount should be refunded to the licensee by the city. In 1905 the section was again amended by adding a proviso to the effect that any owner of such license might surrender it and have the same revoked by the mayor or city council, and upon such revocation should be entitled to have the proportionate part of the fee paid for the license corresponding to the unexpired term. The payments covered a period

of about three years, when they were stopped by an injunction as illegal.

The complaint set forth a large number of distinct causes of action, on account of substantially identical transactions, and prayed judgment in the sum of $26,511.17. As to each cause of action it was set forth that the person mentioned therein procured a license; that the mayor revoked the license and notified the city comptroller; that the city comptroller, in accordance with the ordinance, made out a claim against the city for refundment of the money in favor of the licensee for the unexpired term of the license; that the claim was regularly presented to and allowed and ordered paid by the council, and the refundments were accordingly made. When the license was issued, the licensee signed a power of attorney or assignment of the refundment to the brewing company, authorizing it to surrender the license and to receive the moneys that became payable thereon, and to indorse the licensee's name on any warrant or other instrument issued for said money. In many instances the refundments were made by the city to the brewing company in pursuance of this power of attorney. Where this was not done, the warrants were delivered to the brewing company pursuant to oral authority authorizing the brewing company to collect and receive the refundments. The licensees did not own the buildings covered by their licenses, but were the tenants of an officer or stockholder of the brewing company. The agent of the brewing company was the agent of the landlord. The tenants, in addition to paying the rent monthly, also paid monthly payments to apply on the money advanced by the company for the license fees.

The defendant in its answer (1) denied that the taking was illegal, and asserted that if it was (2) plaintiff was estopped by his laches from demanding its restoration, and (3) in any event the transactions had been validated by legislative enactment. The court below found the defendants correct in the second and third contentions.

1. The defendant urges that the assignments of error are insufficient to present any controversy for determination. The difficulty in the situation is aggravated by the peculiarities of the record. The record contains only the complaint, answers, reply, findings of fact, and conclusions of law, application for liquor license, affidavit for liquor license, bond certificate of liquor license, memorandum, judgment, and

notice of appeal, and statement of license refund. It does not purport to contain the testimony received, nor motions concerning the findings of fact, which may or may not have been made; and it must be admitted that, under these circumstances, considerable embarrassment is created when assignments of error as to the adequacy of findings of fact and the sufficiency of the evidence to support them come to be considered. None the less, in view of the importance and public character of the questions involved, and of the tendency of current practice to consider the merits of an appeal, and not to dispose of it on mere technicalities, we feel constrained to overrule the defendant's objection.

2. It will be here assumed that the ordinance was invalid, and that the estoppel asserted by defendant was no defense. Plaintiff's argument that chronic felony is not a basis for equitable estoppel is striking; but the authorities cited by defendant raise great doubt as to whether a taxpayer, on behalf of the city, years after the transaction in question has been completely executed between the city and the licensee, can recover the refundment to which the latter became entitled under the conditions of the ordinance pursuant to which the application for the license was made and the license granted and a new license fee was received immediately upon such refund from a new license, issued in lieu of the one revoked, and as to whether the money can be recovered from the defendant brewing company, which became the purchaser of the warrant. It subserves convenience, however, to proceed to the consideration of the case upon the assumptions stated.

3. The propositions upon which the decision will be rested concern the validity and effect of chapter 15, p. 14, Laws 1907. That act is as follows:

"That in all cases where the officers of any city in this state having a population of over fifty thousand inhabitants have heretofore in good faith paid out public moneys to any person whose license to sell intoxicating liquors in such city has been revoked, or to his assigns, for the purpose of refunding to such person, or his assigns, any portion of the fee paid for such license, such payments are hereby in all respects validated and legalized."

Plaintiff contends that the act is in no sense curative or remedial, and refers us to a number of cases in which retrospective statutes have been held invalid. It is entirely clear that the law purports to be cur-

ative. The only question in issue, then, is whether or not it is valid. The following reasons are assigned for holding it unconstitutional: (1) That it is special legislation; (2) that it contravenes article 1, § 8, of the constitution, which guarantees to every man a certain remedy in law for every damage to person, property, or character; (3) that it destroys a vested right; (4) that it involves an imposition of taxes for other than public purposes; (5) that it takes property without due process of law; and (6) that it impairs the obligation of contract. These objections are really two: First, that the law violated the constitutional inhibition as to special legislation; second, that it was void for other reasons closely allied to each other, which for purposes of convenience will be considered under the common name—impairment of vested rights.

First. To the constitutionality of the law as special legislation the gist of plaintiff's objection is this: "Here it is sought to make it depend upon the coincidence of two artificial and unrelated conditions, living in a town of a certain size and the good faith of some one else, of whose mental processes and state of heart he can, of course, have no knowledge or control." Exactly who is meant by "he" in this connection is not clear. "He" cannot refer to the legislature, because the legislature does not undertake to determine. It must then refer to the courts; and it is elementary that good faith is one of the issues constantly and properly determined by judicial tribunals. While the argument is not clear, it may fairly be construed to mean that the law is void because it contains "twofold limitations, which are generally found as leading features in all special acts which have come to grief in our country." The argument does not justify the conclusion. Many acts containing twofold limitations have been declared to be special in character, and many of them have been upheld by the courts.

Article 4, § 36, of the constitution of this state, authorized the legislature to regulate the affairs of cities of a stated number of inhabitants by a general law, if it applied equally to all cities of the given classification. In State v. Westfall, 85 Minn. 437, 439, 89 N. W. 175, 57 L. R. A. 297, 89 Am. St. 571, Chief Justice Start said: "Courts ought never to be unmindful of the fact that the lawmaking power is vested in the legislature. Therefore, if there be any facts fairly calling for the exercise of legislative discretion in the classification of particular

subdivisions of the state for the purposes of legislation, courts cannot review such discretion, and declare statutes making such classifications invalid, simply because they differ with the legislature as to the propriety of the classification. It is only when the classification is so manifestly arbitrary as to evince a legislative purpose of evading the provisions of the constitution that the courts may and must declare the classification unconstitutional." How such intention to evade appears in the law here in question has not been made clear. Certainly the four authorities cited by plaintiff do not tend to show that the law is unconstitutional. In State v. Justus, 90 Minn. 474, 97 N. W. 124, the law which required journeymen plumbers to take examinations and procure a certificate of competency was held unconstitutional because of the adoption of arbitrary bases of classification. In the first place the application of the act was restricted to cities of ten thousand inhabitants which have a system of sewers or waterworks, and in the second place an unjustifiable distinction was made between the master plumbers and the journeymen plumbers.

There is obviously no analogy between that case and the case at bar. This is equally true of Hetland v. Board of County Commrs. of Norman County, 89 Minn. 492, 95 N. W. 305, where the operation of an act was limited to such counties as had at the time of its passage expended $7,000 for courthouse property.

Thomas v. City of St. Cloud, 90 Minn. 477, 97 N. W. 125, resembles State v. Justus. The classification includes cities which have owned a system of waterworks and sold or disposed thereof, and which have reserved the right by contract or otherwise to purchase the same. The basis of the classification was properly held to have been so narrow, restricted and peculiar that the inference is unavoidable that the law was not intended to be general in its operation. So in State v. Ritt, 76 Minn. 531, 79 N. W. 535, the act was void because "the essential provision of this act and the one which was designed to differentiate counties falling within its purview is the one providing for one assessor for the whole county, instead of an assessor in each township, city and village, as provided in the then existing general laws." Even in this case the court was not "prepared to say that population might not be a legitimate basis upon which to divide counties into two classes—one in which there should be but one assessor for the entire county, and the

other in which there should be an assessor for each municipal division of the county." The attempted classification was held "arbitrary and incomplete, for the reason that it does not include all the members of the same class, but excludes some whose conditions and wants render such legislation equally necessary and appropriate to them as a part of the same class." 76 Minn. 535, 536, 79 N. W. 536.

On the contrary, it has been repeatedly held that a law applying to cities of a class designated by population and determining the legal status of certain financial controversies is not unconstitutional because of the inhibition of special legislation. Thus, in Alexander v. City of Duluth, 77 Minn. 445, 80 N. W. 623, an act legalizing bonds to take up general indebtedness of cities of a certain class, in State v. Gunn, 92 Minn. 436, 100 N. W. 97, an act legalizing county orders and authorizing the issuance of certificates of indebtedness, and in State v. Brown, 97 Minn. 402, 106 N. W. 477, an act legalizing school bonds, were upheld. In the case last cited the entire subject of the validity of curative acts, as distinguished from special laws, was elaborately considered by Mr. Justice Elliott. All relevant cases, including those to which plaintiff refers us, and the leading opinions in other jurisdictions, were there examined and considered. It would be a work of supererogation to here further review or distinguish those authorities. Within the rules there laid down, the act here in question was valid as a curative act. No case decided since tends in any wise to alter this conclusion. The object of this statute was to remedy a present condition. It was a valid exercise of legislative discretion, was not based upon an arbitrary or illusory distinction, and was not invalid because it constituted special legislation.

Second. The remaining objections to the validity of the law are the familiar ones usually, if not invariably, urged against curative laws which create a right or impose a complete legal obligation upon a state of facts which had given rise to an imperfect right or to an unenforceable obligation only. Their effect is to deny ability of legislation to impair a vested right. The authorities to which defendant has referred us announce elementary and indisputable principles. None of them are specific or inconsistent with the fundamental principles which underlie the power of the legislature to ratify and upon which the decision of the present case depends. That principle is this: Unless

there be a constitutional inhibition or an interference with a vested right, the legislature has the power to validate invalid contracts or to ratify and confirm any act it might lawfully have authorized in the first place. Anderson v. Santa Anna, 116 U. S. 356, 6 Sup. Ct. 413, 29 L. Ed. 633, in which Harlan, J., examined and stated the authorities on this subject at considerable length. And see Bolles v. Brimfield, 120 U. S. 759, 7 Sup. Ct. 736, 30 L. Ed. 786. For convenience the exceptions will be first considered, and afterwards the rule will be considered.

The instant case is not within the exception of a constitutional inhibition. It is clear that if an invalid contract be executed by a municipality, and a constitutional amendment be adopted subsequently denying to the legislature the power of ratifying, a later curative act is inoperative. Sykes v. Mayor, 55 Miss. 115, 116; Katzenberger v. Aberdeen, 121 U. S. 172, 7 Sup. Ct. 947, 30 L. Ed. 911; Elliott, Mun. Corp., 151, § 160. Here, however, the power of the legislature to legalize was the same as its power to have originally authorized. No constitutional change had diminished or affected that power. The plaintiff does not contend that the legislature could not have originally authorized the ordinance here assumed to be invalid. His argument is that the ordinance was wholly unauthorized by the charter.

The instant law is not within the exception based on the inability of the legislature to interfere with vested rights, within the comprehensive sense here given to that expression. It is familiar that there are many instances and classes of cases in which the legislature may cure irregularities or informalities, but may not be able to validate substantial defects. Thus, while it may cure mere technical error in tax proceedings, it cannot validate defects which go to the jurisdiction of the officers conducting the proceedings. McCord v. Sullivan, 85 Minn. 344, 88 N. W. 989, 89 Am. St. 561, and Olson v. Cash, 98 Minn. 4, 107 N. W. 557, to which plaintiff refers us, are of this character; and see Black, Const. Law, § 288, p. 630. Clearly a legislature cannot diminish the vested right of either the landowner or tax certificate purchaser by retrospective laws. Generally any right vested in a private person to a thing, to a cause of action, or to a defense to an action is beyond the power of the legislature to destroy or diminish. The case at bar, however, is not of this class. Here no private right of

any kind had vested. By way of contrast, see authorities collected in note to 22 L. R. A. 379.

The instant case is within the general principle that the legislature may confirm whatever municipal obligation it could have authorized at the time of the attempted ratification. The legislative power was not, under the constitution, restricted to cure mere informalities or irregularities. The terms of the law purported to legalize the transaction. There was nothing which would have prevented the legislature from originally authorizing such transactions by the municipality. What it could have done it may confirm. In Utter v. Franklin, 172 U. S. 416, 19 Sup. Ct. 189, 43 L. Ed. 498, certain void territorial bonds were attempted to be validated by the act of congress by providing for their funding. Brown, J., said: "The fact that this court had held the original * * * bonds invalid does not affect the question. They were invalid because there was no power to issue them. They were made valid by such power being subsequently given, and it makes no possible difference that they had been declared to be void under the power originally given." And see Bolles v. Brimfield and Anderson v. Santa Anna, supra. This rule, enforced by many other federal decisions, is the settled law of this state. Thus it was held that bonds, irregularly issued by a municipal corporation may be legalized. Kunkle v. Town of Franklin, 13 Minn. 119 (127) 97 Am. Dec. 226; Comer v. Folsom, 13 Minn. 205 (219). In Nash v. Lowry, 37 Minn. 261, 33 N. W. 787, it was held that an invalid ordinance might be converted by a curative act into an irrevocable contract. And see Coles v. County of Washington, 35 Minn. 124–127, 27 N. W. 497. In State v. Bruce, 50 Minn. 491–495, 52 N. W. 970, Collins, J., said: "But the distinction between valid and invalid legislation on this subject has been pointed out many times, and it is well settled that, if there rests upon the designated municipality any obligation or duty, moral or equitable (using these words in a large and popular sense), to pay the claim, then a legislative act requiring its payment is supported as valid by the great weight of authority." There is much more authority to the same effect, reference to which would merely encumber the record.

We are of opinion that the facts bring this case within this rule. The city had received an equivalent for the transactions legalized. See Mr. Justice Field in New Orleans v. Clark, 95 U. S. 644, 654, 24 L. Ed.

521. It had been paid and had received the actual amount of money involved in the curative law. To make definite the exact facts, we quote from the well-considered memorandum of the learned trial court: "The licensees, the city, and the taxpayers have assumed the ordinance to be valid, acted on it, incorporated its provisions in the very license purchased, and, what is more, in each case referred to in the complaint when a refund of a portion of the $1,000 fee was made at once another $1,000 was received by the city from another licensee for the same place, or for another place if the holder of the surrendered license moved to it. The last $1,000 was undoubtedly paid out and accepted on the understanding that the pro rata part of the unexpired time of the license for which the first $1,000 was paid was to be refunded. For the place licensed the city has had the full $1,000 per year. From the licensee who has run one saloon only the city has had the full $1,000 per year. If the licensee had not been permitted to surrender his license and have it revoked, no new license would or could have been issued to his successor, nor would he have applied for a license to do business at any other place. The city could not issue a new license and obtain another $1,000, unless the existing license for the same place was surrendered." We therefore conclude that the curative law was valid.

The questions presented to this court are purely legal, and not moral, in character. They should be, and have been, determined by the application of principles of law only, and not of private views of public policy. Plaintiff has eloquently urged that: "It is the curse of the liquor traffic that, while the most apparent physical effects are observable in the unfortunates to whose weakness and passions it directly ministers, yet the blight of it, through the damnable social and political alliance it has contracted with the state, permeates the entire community, not sparing the wisest, the bravest, the best. We are so accustomed to seeing this mighty power set at naught every restraint which the law has sought to put upon it—defiantly where it dares; insidiously where it must—that the effort in the utmost honesty to apply the ordinary rules to matters where it is involved seems almost as difficult as imagining the fourth dimension." It is our manifest duty to hold that legislation valid under the constitution is effectual. The expediency of the

law immediately under consideration was a matter exclusively for the legislature to determine.

In this view of the case it is unnecessary to question defendant's further contention, supported as it is by apt authorities, that the right to regulate traffic in intoxicating liquors rests wholly in the police power of the state, has no connection with and is in no sense founded on the power of taxation, that the passage of the act was an exercise of the police power of the state, and that the act was valid for that reason.

4. There is no merit to the contention that the findings fail to bring the case within the scope of the act, because good faith is shown as to the part of the officials only, and that the findings do not show good faith as to any officials. The limited record presented to us, involving the absence of testimony and of motions concerning the findings, if any were made, renders it difficult, if not impossible, to disturb the findings of fact, and hence the conclusions of law. It is elementary that such findings must be construed in the light of the whole proceedings and testimony. That light is wholly absent here. On a number of hypotheses, consistent with the record and perhaps compelled by the necessary presumptions in favor of the propriety of judicial conduct, affirmance would necessarily follow. It is unnecessary, however, to so decide here; for the same conclusions must be drawn from other considerations.

The statute required affirmative proof of the good faith of the officers who had "paid out public moneys." It did not require proof of good faith on the part of the council which had appropriated public moneys or ordered public moneys to be paid out. Defendant urges that a curative act should receive a liberal construction, and cites State v. Spaude, 37 Minn. 322, 324, 34 N. W. 164, Farnsworth L. & R. Co. v. Commonwealth Title Ins. & T. Co., 84 Minn. 62, 86 N. W. 877, and State v. Brown, 97 Minn. 402, 106 N. W. 477. The correctness of that proposition is not here involved. The natural and proper interpretation is that good faith of the officers who "paid out public money" must be shown. It would be a strained and unnatural construction to require that good faith on the part of the council should also be shown. If the legislature had so intended it, it should have so provided. In other words, a law which validates certain transactions on proof of good faith

of both legislative and administrative officers of the city is not the same as a law which validates such transactions on proof of good faith of administrative officers of the city only. This law did not in terms, or by reasonable inference, require proof of good.faith on the part of the legislative body of the municipal corporation.

The trial court found "that in making such refund of unexpired license fees in each of the instances mentioned in the complaint the officers of said city, to wit, the mayor, comptroller, and treasurer, made the same in good faith, believing such refunds to be in accordance with law. It, however, appears that some of the city officials named knew that the defendant brewing company had advanced or loaned the applicant for license money to pay for the license fee, and knew that the company held the power of attorney above referred to and the license as security for such loan." It clearly and affirmatively found that the mayor, comptroller, and treasurer made the payments in good faith. The subsequent findings as to their knowledge did not have the effect of negativing the specific finding. The error in the legal conception of these officers was not inconsistent with the bona fides of their conduct. The additional finding was unnecessary and immaterial.

Affirmed.