STATE *ex rel.* BOARD OF COURTHOUSE & CITY HALL COM'RS *vs.* CLAYTON R. COOLEY, County Auditor.

Submitted on briefs June 28, 1893. Reversed June 30, 1893.

No. 8329.

**This statement reversed on reargument.**

An act of the legislature entitled "An act to provide additional means for completing and furnishing the courthouse and city hall building now in process of erection in the city of Minneapolis, and to authorize the issue and sale of bonds therefor," approved April 8, 1893, is unconstitutional and void, because prohibited by that portion of section 33, Art. 4, of the constitution, which forbids the passing of any local or special law "regulating the affairs of * * * any county, city, village, township, ward, or school district.".

On Reargument.

Reargued Jan. 12, 1894. Affirmed Feb. 26, 1894.

**Certain points in the former decision adhered to.**

The decision on the points presented on the former argument adhered to.

**Different rules may be applied to different classes.**

A constitutional prohibition against special legislation on a subject does not prevent the legislature from dividing it into classes, and applying different rules to the different classes.

**The classification must be based on substantial distinctions.**

But such classification must be based upon substantial distinctions, which make one class so different from another as to suggest the necessity of different legislation with respect to them.

**And must be germane to the purposes of the law.**

And the characteristics which form the basis of the classification must be germane to the purposes of the law; that is, the legislation must be confined to matters peculiar to the class.

**The classification must be complete.**

Further the classification must be complete, so that the law will apply to every member of the class or every object under the same conditions.

**Number of members in a class immaterial.**

If the basis of classification is valid, it is immaterial how many or how few members there are in the class,—how many or how few objects there are to which the law can apply.

**Character of the law depends on its substance, not on its form.**

The character of an act as general or special depends on its substance, and not on its form.

**Laws 1893, ch. 243, is a general law.**

Tested by these rules, Laws 1893, ch. 243, entitled "An act to provide additional means for completing and furnishing the courthouse and city hall building now in process of erection in the city of Minneapolis, and to authorize the issue and sale of bonds therefor," although special in form, is general in fact.

Appeal by Clayton R. Cooley, County Auditor of Hennepin County, from a judgment of the District Court of that County, *Robert D. Russell*, J., entered June 20, 1893, directing a peremptory writ of mandamus to issue commanding him to countersign court house and city hall bonds under Laws 1893, ch. 243.

The Board of Court House and City Hall Commissioners was created by Sp. Laws 1887, ch. 395. The act was amended by Sp. Laws 1889, ch. 62, Sp. Laws 1891, ch. 132. The Board was authorized by Laws 1893, ch. 243, to issue and sell additional bonds to complete the court house and city hall in Minneapolis. These new bonds were designated "County Series" and were to be signed, sealed and countersigned in the same manner as those issued under the first act. Sp. Laws 1887, ch. 395, § 11, provided that the county series should be issued under the seal of the board signed by the president and secretary thereof and countersigned by the Auditor of Hennepin County. New bonds under Laws 1893, ch.

243, to the amount of $500,000 were prepared, signed, sealed and presented to the respondent Cooley to be countersigned, but he refused, claiming that the law of 1893 is unconstitutional and void. Thereupon the board presented to the District Court its relation and obtained an alternative writ of mandamus commanding him to countersign the bonds or show cause before the court on June 17, 1893. He made return that the statements in the relation are true, but that Laws 1893, ch. 243, is void because prohibited by Constitution, Art. 4, § 33, adopted in November, 1892. He asked that the peremptory writ be denied. But the court after argument granted the writ and he appeals.

*Frank M. Nye*, County Attorney, and *A. H. Hall*, for appellant.

Court Houses are a subject of general legislation. They are an indispensable institution provided for by general law. 1878 G. S. ch. 8, § 86, provides that each county organized for judicial purposes shall provide at the county seat a suitable court house and keep it in good repair. What is true as to court houses is true in a general way as to city halls. They are a necessary institution of cities. *Van Riper* v. *Parson*, 40 N. J. Law, 1; *Borough of Henderson* v. *County of Sibley*, 28 Minn. 515; *Pell* v. *Newark*, 40 N. J. Law, 71; *Bingham* v. *Camden*, 40 N. J. Law, 156; *Sutterly* v. *Camden Common Pleas*, 41 N. J. Law, 495; *State ex rel.* v. *Hammer*, 42 N. J. Law, 435; *State* v. *City of Trenton*, 42 N. J. Law, 486; *Tiger* v. *Morris Common Pleas*, 42 N. J. Law, 631; *Hammer* v. *State ex rel.* 44 N. J. Law, 667; *Board, &c., of Hudson* v. *Buck*, 51 N. J. Law, 155.

Laws 1893, ch. 243, is a special law. It purports to regulate the affairs of the county and city. This is prohibited by Const. Art. 4, § 33, adopted November 8, 1892, by vote of the people.

A general law could be made applicable. The constitutional provision is complied with by a statute applicable to all cities of a certain class having more than a certain number of inhabitants, though in fact there be but one city in the state of that class. *Welker* v. *Potter*, 18 Ohio St. 85; *Bourland* v. *Hildreth*, 26 Cal. 161; *Brooks* v. *Hyde*, 37 Cal. 366; *Rice* v. *State*, 3 Kans. 141; *Jackson* v. *Shawl*, 29 Cal. 267; *Gentile* v. *State*, 29 Ind. 409; *State* v. *Parkinson*, 5 Nev. 15; *Ensworth* v. *Albin*, 46 Mo. 450; *People ex rel.* v. *Wallace*, 70 Ill. 680.

The word "affairs" includes business of any kind especially public business. Any attempt to deprive a city of its control of matters which are the subject of municipal regulation, or to confer upon it additional powers, or to change the manner of exercising its powers is a regulation of its affairs and is inhibited by the constitution. *Pell* v. *Newark*, 40 N. J. Law, 71; *Bingham* v. *Camden*, 40 N. J. Law, 156; *Freeholders of Hudson Co.* v. *Buck*, 51 N. J. Law, 155.

*Daniel Fish*, for the relator.

The Board of Court House and City Hall Commissioners was created by Sp. Laws 1887, ch. 395. The supplementary act, Sp. Laws 1889, ch. 62 enlarges the membership of the Board and provides with greater detail for its perpetuation.

In December, 1890, certain taxpayers contending that the act limited the Board to the expenditure of $1,500,000, sought to enjoin it from proceeding upon plans which involved a cost exceeding that sum. It was admitted that the plans adopted could not be carried out for less than $2,500,000. The opinion of the court by Judge *Lochren* was that the Board was not limited, and the injunction was denied. *Morrison et al.* v. *Cooley*, Hennepin County District Court File No. 45,758. Then Sp. Laws 1891, ch. 132, was enacted prohibiting the issue of bonds for more than $1,500,000. But the building had meantime been partly constructed upon the larger scale. The necessity for more money became imperative and Laws 1893, ch. 243, was enacted April 8, of that year. But in November, 1892, the State Constitution, Art. 4, § 33, was amended prohibiting local or special statutes regulating the affairs of any county or city where a general law can be made applicable. The questions at bar are whether this statute is local and special, within the meaning of the Constitution; and if so, whether a general law could be made applicable in this particular case. When a general law can be made in a given case and when a special statute is necessary are questions in their nature legislative, rather than judicial. It is a question of expediency, not of law; a matter of political judgment, rather than of judicial opinion. Accordingly, in nearly all the states where a similar constitutional provision prevails, we find the courts holding that the opinion of the legislature as to

whether a general law can or cannot be made applicable in a given case is conclusive upon them. The judiciary simply follows the legislature, and if that body deems a special law necessary that fact is taken as proof that a general law could not be made applicable. *State* v. *Hitchcock*, 1 Kans. 178; *McGill* v. *State*, 34 Ohio St. 228; *State* v. *County Court*, 50 Mo. 323; *Owners of Lands* v. *People ex rel.*, 113 Ill. 296; *State* v. *Tucker*, 46 Ind. 355; *Brown* v. *Denver*, 7 Colo. 305; *People* v. *McFadden*, 81 Cal. 489.

But the amendment of our constitution provides that whether a general law could have been made applicable in any case is a judicial question, and as such shall be judicially determined without regard to any legislative assertion on that subject.

This provision, obviously enough, was suggested by the rulings above cited wherein the courts of other states had virtually declined to review the legislative judgment upon such questions. A similar provision was added to the Missouri constitution in 1875, after *State* v. *County Court*, 50 Mo. 323, was promulgated. It is peculiar to these two states. What effect is to be given to this provision? Certainly, it does not alter the inherent nature of the question itself. The query whether a given subject of legislative control can be best treated by laws of general application or by local acts drawn with a view to special circumstances, if it be essentially a political question, must remain such despite any mere constitutional declaration to the contrary.

Prohibition of special legislation has found a place in the constitutions of other states and contentions thereunder have appeared in the courts. *Kimball* v. *Town of Rosendale*, 42 Wis. 407; *Keenan* v. *Milwaukee Co.*, 25 Wis. 339; *Ayars' Appeal*, 122 Pa. St. 266; *Van Riper* v. *Parsons*, 40 N. J. Law, 1; *Wheeler* v. *Philadelphia*, 77 Pa. St. 338; *Dempsey* v. *City of Newark*, 53 N. J. Law, 4.

COLLINS, J. By the provisions of Sp. Laws 1887, ch. 395, a board of commissioners was created with power to acquire certain land for the purpose in the city of Minneapolis and thereon to erect a building to be used, when completed, by the county of Hennepin and said city, jointly, for a county courthouse and a city hall. The issuance of bonds in a specified amount was authorized, that money

might be had with which to pay for the land and erect the building. These bonds were to be countersigned by the county auditor. They were issued and sold, the land was acquired, and work on the building progressed until about January 1, 1893. It was then unfinished, and, not having funds sufficient to complete it in accordance with the plans, interested parties secured the passage of an act at the legislative session held in 1893, entitled "An act to provide additional means for completing and furnishing the court-house and city hall building now in process of erection in the city of Minneapolis, and to authorize the issue and sale of bonds therefor." These bonds were to be in the same general form as those authorized by the statute of 1887, and their issuance and sale were to be governed by the express provisions of that act. Upon presentation, the county auditor, this defendant, refused to countersign these bonds, and this proceeding in *mandamus* was brought to compel him to perform this alleged duty.

The defendant justifies his course upon the ground that the enactment of 1893 is void, because interdicted by the Constitution, Art. 4, § 33, relative to special legislation. This section, it must be noticed, was adopted by vote of the people at the general election held in November, 1892, and took effect prior to the passage of the act authorizing the issuance and sale of the bonds in controversy. The sole question before us is whether the legislation upon which the validity of these proposed obligations depends was obnoxious to the constitutional provision. That portion of the section upon which defendant relies reads as follows:/"Sec. 33. In all cases where a general law can be made applicable, no special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and, as such, shall be judicially determined, without regard to any legislative assertion on that subject. The legislature shall pass no local or special law regulating the affairs of or incorporating, erecting, or changing the lines of any county, city, village, township, ward, or school district, or creating the offices, or prescribing the powers and duties of the officers of, or fixing or relating to the compensation, salary, or fees of the same, or the mode of election or appointment thereto,  *  *  *:  provided, however, that the inhibitions of local or special laws in this section shall not

v.56m.—35

be construed to prevent the passage of general laws on any of the subjects enumerated.

"The legislature may repeal any existing special or local law, but shall not amend, extend, or modify any of the same."

1. The first paragraph of the section is entirely unlike anything that has previously appeared in the fundamental law; while the second, in reference to specific subjects, respecting which there shall be no local or special legislation, is but an enlargement of section 33, prohibiting the enactment of special or private laws relative to various enumerated subjects, as that section was originally adopted and made a part of the constitution in 1881.

But at this time it is not necessary, and would be unwise, to consider or determine the full purpose and scope of the first paragraph, the opening clause, of section 33 as it now stands. It is sufficient to say that we regard it as independent of the sentence which follows, and that the specified prohibitions enumerated in the second sentence or clause are not subject to or modified by the first, which forbids the enactment of special laws where general laws can be made applicable.

2. It seems obvious that the last paragraph of the section, prohibiting the amendment, extension, or modification of existing special or local laws, applies to all special or local laws on all subjects as to which special or local legislation has been prohibited, namely, the various subjects distinctly enumerated in the preceding paragraph. No other effect can be given to this portion of the section.

3. It is also obvious that the case covered by the act of 1893 is not one to which a general law could have been made applicable. A special board of commissioners had been designated to perform certain specified duties, had been authorized to cause certain bonds to be issued and sold, and with the proceeds to purchase a particular tract of land, and to thereon erect a public building for the joint use of the county and city. The land had been secured, and the building partly completed, when, more money being needed, the issuing of additional bonds, to be the obligations of the county, only, was authorized. The situation was so peculiar that no law, it would seem, could have been framed which would have covered it, and still be a general law in any sense. Such a law might have been general in form, if enacted, but, of necessity, would have been

special in its operation, and this would have violated the constitutional inhibition as much as if it were special in form. *Nichols* v. *Walter*, 37 Minn. 264, (33 N. W. 800.)

4. This brings us to the inevitable proposition that, if the act of 1893 falls within any of the specific prohibitions enumerated in the second paragraph of the section, its validity cannot be upheld, and this remark would apply to the original law of 1887, had the existing provision in the constitution been in force when it was enacted. In this connection we have simply to inquire whether this law regulates the "affairs" of a county or city; and the statement heretofore made as to the nature of the original act and that of 1893, which was, in effect, nothing more than an amendment, fully answers the inquiry. Under the law as it stood prior to the legislation of 1887 it was the duty of the county, through its officers, to provide a courthouse, if one was needed. 1878 G. S. ch. 8, § 86. But this could not have been undertaken jointly with the city. *Borough of Henderson* v. *County of Sibley*, 28 Minn. 518, (11 N. W. 91.) And while our attention has not been called to any charter provision which would authorize the city officials to erect a city hall, their power to provide proper city offices could not well be doubted. Yet by the act of 1887 the duty and power in these matters was taken away from the county and city officers, and conferred upon a special board without the approval of the people of either county or city. We need spend no time in demonstrating that when the legislature authorized and directed the issue and sale of the bonds of each of these municipalities and the erection of a public building for their joint use, to be paid for by taxes which were directed to be levied for that purpose, it attempted a very noticeable regulation of the "affairs" of a county and of a city. Special acts which relate to the government of a municipality are excluded by the words "regulating the internal affairs" of such municipality in the constitution of the state of New Jersey, and it has been held in that state that any attempt to deprive a city of its control of matters which are the subject of its control incidentally, or which have been expressly granted, or to confer upon it additional powers, or to change the manner of exercising the powers already existing, is a regulation of such internal affairs, and inhibited by the constitution. *State ex rel.* v. *Mayor &c. of Newark*,

40 N. J. Law, 71; *Bingham* v. *Mayor &c. of Camden*, Id. 156; *Free-holders of Hudson Co.* v. *Buck*, 51 N. J. Law, 155, (16 Atl. 698.)

The result of this litigation may prove very unfortunate in the present condition of the building in question, but under the constitutional provision the statute of 1887 could not have been lawfully enacted, and that of 1893 is clearly within the prohibition we have discussed.

Judgment reversed.

---

## On Reargument.

COLLINS, J.  When the case was submitted at the last term of this court, counsel for relator conceded, or at least did not deny, that the act under consideration (Laws 1893, ch. 243) was special in operation, as well as in form; but his contention was (1) that it was not an act "regulating the affairs of any county or city," within the meaning of the Constitution, Art. 4, § 33, as amended in 1892; but, if it was, (2) that the specific prohibitions enumerated in the second clause of that section are qualified by the provision in the first clause limiting the prohibition against special legislation to cases where a general law can be made applicable.  Our decision on both those points was adverse to the relator; and then, assuming, what relator conceded, that the law was special, the conclusion necessarily followed that it was invalid.  Hence, if the result should have been different on other grounds, the responsibility can hardly be said to be on the court.

The court is still unanimously of opinion that upon both of the questions presented on the former argument the decision was right; but now, on the reargument, we are confronted, for the first time, with the question whether the act is in fact "special," within the meaning of the constitution.

It may be stated as settled law that a constitutional prohibition against special legislation on a particular subject does not deprive the legislature of the power to divide it into classes, and apply different different rules to the different classes, provided only that it adopts a proper basis of classification; and the law is none the less general, in the constitutional sense, because it applies only to one of these classes.  To illustrate, the provision against special legislation reg-

ulating the affairs of a city does not require that all laws on that subject shall apply alike to all cities in the state, and thus prevent their division into classes for legislative purposes. Provisions against special legislation are to be found in the constitutions of numerous states, some of them having been in force for over forty years, and the courts have uniformly recognized the right of the legislature to divide a subject into classes, the only question generally being whether it had adopted a proper basis of classification. No court has recognized the existence of this power to classify more distinctly than we have. In *Nichols* v. *Walter*, 37 Minn. 264, (33 N. W. 800,) and in *State ex rel.* v. *Spaude*, 37 Minn. 322, (34 N. W. 164,) this court, in both cases speaking through Chief Justice Gilfillan, said that "it must be conceded that when a general law, uniform in its operation, is required, the law is none the less general and uniform because it divides the subjects of its operation into classes, and applies different rules to different classes. For the purposes of efficient and beneficial legislation, it is often necessary to do so." And again: "A law, to be general, need not operate alike upon all the inhabitants of the state, or all the cities or all the villages in the state. To require this would be utterly impracticable. A law is general which operates alike upon all the inhabitants or all the cities or all the villages or other subjects of a class of such subjects. That for the purpose of legislation it may be necessary, and that the legislature may make such classification, is undoubted." The same doctrine is repeated in *State ex rel.* v. *Sheriff of Ramsey Co.*, 48 Minn. 236, (51 N. W. 112.)

Hence a "general law" does not import universality in the subject or operation of the law. "General" is defined by Webster as relating to a *genus*; pertaining to a whole class or order. The line of demarcation between general laws and special laws often seems indefinite and difficult to draw; but, if the principles upon which the distinction rests are kept in mind, the difficulty is not nearly so great as might seem. A law is general, in the constitutional sense, which applies to and operates uniformly upon all members of any class of persons, places, or things requiring legislation peculiar to itself in matters covered by the law; while a special law is one which relates and applies to particular members of a class, either particularized by the express terms of the act, or sep-

arated by any method of selection from the whole class to which the law might, but for such limitation, be applicable. And in this connection there should be kept in mind the distinction between "public" and "private," and "general" and "special," as the latter terms are used in these constitutional restrictions; for special legislation in the constitutional sense may be either public or private.

The principal as well as most difficult question is, what constitutes a class, or what constitutes a proper basis of classification, for legislative purposes. We do not intend, neither is it necessary for the purposes of this case, to go into anything like a full discussion of this subject of classification, or to do more than to state a few general rules. A very able and exhaustive discussion of the whole subject will be found in the American Law Register & Review for September, 1893, in one of a series of articles by Charles C. Binney, Esq., on "Restriction upon Local and Special Legislation in the United States."

It should be noted that in determining whether the legislature has adopted a proper basis of classification, under these constitutional restrictions, the courts have uniformly applied the same tests which they apply in determining whether a law is what is commonly called "class legislation;" that is, legislation which selects particular individuals from a class, and imposes upon them special burdens, from which others of the same class are exempt, and thus denies them the equal protection of the laws. All class legislation is special legislation, although all special legislation is not class legislation, in that sense of the term. The evils aimed to be prevented in the two instances are somewhat different, but the test of the propriety of the method of classification is the same in both.

Hence, in the cases cited, this court, in determining whether an act was "special legislation," applied precisely the same test to the mode of classification which it applied in determining whether an act was "class legislation" in *Lavallee* v. *St. Paul M. & M. Ry. Co.*, 40 Minn. 249, (41 N. W. 974;) *Johnson* v. *St. Paul & Duluth R. Co.*, 43 Minn. 222, (45 N. W. 156;) and numerous other cases.

The fundamental rule is that all classification must be based upon substantial distinctions, which make one class really different from another. As was said in *Nichols* v. *Walter* and *State ex rel.* v.

*Spaude,* it must be based upon some natural reason,—some reason suggested by necessity, by some difference in the situation and circumstances of the subjects placed in the different classes, suggesting the necessity of different legislation with respect to them. By necessity is meant practical, and not absolute, necessity; but the characteristics which will serve as a basis of classification must be substantial, and not slight or illusory.

For example, distinctions due merely to pre-existing repealable special legislation would not, of themselves, constitute a proper basis of classification, for that would tend to perpetuate the very peculiarities which the constitution was designed ultimately to remove. In such cases the legislature can always remove the distinction by merely repealing the special legislation. Neither can classification be based upon existing circumstances only, or those of limited duration, except where the object of the law itself is a temporary one. This rule applies peculiarly to cases where the membership of the class may change in the future, so that new members may acquire the characteristics of the class, and present members lose them. There the law must provide for the future, so that the classification may remain permanent, although the membership of the class may change. Examples of acts obnoxious to this rule are laws classifying cities on the basis of present population.

*Cobb* v. *Bord,* 40 Minn. 479, (42 N. W. 396,) is an example of the cases where, in a law intended to provide merely for temporary objects, existing or temporary circumstances may be a proper basis of classification. It may be added in this connection that the duration of an act has nothing to do with its character as general or special. If it be general in its application while it continues in force, it is none the less general because limited in duration.

Another rule is that the characteristics which form the basis of the classification must be germane to the purpose of the law; in other words, legislation for a class, to be general, must be confined to matters peculiar to the class. There must be an evident connection between the distinctive features to be regulated and the regulations adopted. An illustration of a law obnoxious to this rule would be the case supposed in *Nichols* v. *Walter, supra,* where towns situated on rivers are made a class, for the purpose of con-

ferring on them special powers with reference to maintaining schools.

Another rule is that, to whatever class a law applies, it must apply to every member of that class. As was said in *Johnson* v. *St. Paul & Duluth R. Co.*, *supra*, not only must the law treat alike, under the same conditions, all who are brought within its influence, but in its classification it must bring within its influence all who are under the same conditions; and as already suggested, if the basis of classification is such that new members of the class may come into existence, the law must be so framed as to include them when they arise. *Nichols* v. *Walter*, *supra*, furnishes an instance of a law obnoxious to this rule.

Another proposition that may be laid down as beyond question is that, if the basis of classification is valid, it is wholly immaterial how many or how few members there are in the class. One may constitute a class, as well as a thousand, although, of course, the fewer the members, the closer the courts will scrutinize the act to see that it is not an evasion of the constitution.

An illustration of this proposition may be found in acts classifying cities by population. The mere fact that there is only one city, and there may never be another, having the requisite population to belong to a class, will not render the law special. The last proposition to which we will refer is that the character of an act as general or special depends on its substance, and not on its form. It may be special in fact, although general in form; and it may be general in fact, although special in form. The mere form is not material. To illustrate, suppose mountains were one of the subjects on which special legislation was prohibited, and that there was only one mountain in the state; a law referring to that mountain by name would be special in form, but general in fact, according to all the rules.

Or suppose that special legislation was prohibited with reference to the police regulation of the shores of the great lakes; would it be claimed that a law was special in fact because, by its terms, it applied only to Lake Superior? Or would it be any less general because, by its terms, its operation was limited to the counties of St. Louis, Lake, and Cook? Most certainly not.

In most, if not all, of the adjudicated cases, the laws under con-

sideration were general in form, but were assailed as being special
act; but the test must be the same when the law is special in
rm, but is claimed to be general in fact.

It only remains to apply these principles to the act under con-
sideration.   It is unnecessary to state at length the provisions of
the special law of 1887, as these were fully set out in the former
opinion; and the law will speak for itself.   Under this law the
commissioners had acquired title in themselves to the designated
site for a city hall and courthouse.   By the provisions of the act,
they were to retain this title until the building was completed, and
until they had adjusted the accounts between the city and county,
in order to charge each with its proper share of the entire cost;
and then they were to convey to each its respective share of the
property.   They had gone on and partially constructed the building,
and had expended all the funds thus far provided for that purpose,
and, in doing so, had expended two-thirds of these funds on the
part of the building designed for the use of the county; and, as the
matter stood, nobody but the board had authority to adjust this
inequality in the accounts, and that only on the completion of the
building.   Obviously, the board could not complete the building
without more funds, and these could not be obtained without further
legislation.   The courts might, perhaps, have granted relief by way
of adjusting the accounts between the city and the county, and
directing a conveyance to each of a part of the unfinished structure;
and then, perhaps, steps might have been taken by the city and
county, respectively, by which each could finish its part of the
structure so as, in the end, to secure a city hall and courthouse in
some form.   But the present physical conditions were such that,
without additional legislation, the building could never be com-
pleted; and the difficulties in the way of carrying it on to comple-
tion on any other plan than as a joint enterprise were very serious,
if not well nigh insuperable.   The difficulty could not be removed
by repealing the special act of 1887, for the uncompleted building
and the outstanding uncompleted contracts for material and con-
struction would still remain.   No legislation more general in fact
than the act of 1893 would fully meet the case.   If that act had
been general in form, it could not be made more general in fact,
and still fully cover the situation.   Such, in short, was the condi-

tion of things under which the act of 1893 was passed, and which it was designed to meet.

· It seems to us that, if the other essentials of a proper classification exist, this condition of things constituted such substantial distinctions as, in the language of *Nichols* v. *Walter, supra,* "to suggest the necessity of different legislation with respect to it." If not, then the legislature is virtually deprived of jurisdiction to legislate on the subject in any form,—a conclusion not to be lightly reached.

Inasmuch as courts will in such cases take judicial notice of all facts bearing on the constitutionality of the law, we know that this is the only case of the kind—the only member of the class—which now exists, or ever can exist; for, under the constitutional amendment of 1892, no other special law like that of 1887 can be enacted. Hence the classification is complete.

Again, the legislation (providing funds to complete the building) is confined to matters connected with and peculiar to the distinctive features of the case; or, in the language of the rule, the characteristics forming the basis of the classification are germane to the purpose of the law.

Finally, as we have already seen, the facts that the law is special in form, and that it applies to only a single object, or, in the language of another rule, that the class consists of only one member, are not important.

Our conclusion is that the act, although special in form, is general in fact, within the meaning of the constitution.

Judgment affirmed.

BUCK, J., absent, sick, took no part.

(Opinion published 58 N. W. Rep. 150.)