## W. B. ROE v. CITY OF DULUTH AND OTHERS.[1]

July 21, 1922.

No. 23,010.

**Bonds of Duluth for acquisition of contagious hospital require approval at special election.**

1. Assuming, but not deciding, that a contagious hospital is a public utility plant within the meaning of the charter of the city of Duluth, the city council would not be authorized under section 55 of the charter to issue bonds for the acquisition of such a hospital, unless such issue be submitted to and approved by the voters at an election called for that purpose.

[1]Reported in 189 N. W. 429.

Act of 1921 unconstitutional—special legislation.

    2. Chapter 304, Laws 1921, which purports to authorize such issue by the city council, is so framed that no other city than those included when it took effect can come within its operation, and violates the constitutional provisions against special legislation.

 

Action in the district court for St. Louis county to enjoin defendants from any further action in the issue, execution, sale and delivery of certain municipal bonds. Defendants' demurrer to the complaint on the ground that the facts therein stated did not constitute a cause of action was sustained, Magney, J. From the order sustaining the demurrer, plaintiff appealed. Reversed.

*McHugh & O'Donnell,* for appellant.

*John B. Richards,* City Attorney, for respondents.

HOLT, J.

The city of Duluth operates under a Home Rule Charter. On August 15, 1921, its city council passed ordinance No. 1682, providing for the issuance, form and sale of $25,000 of bonds for the purpose of acquiring a site, constructing and equipping a contagious hospital. The ordinance was duly approved on the seventeenth and published on the eighteenth of August, 1921. It purported to take effect 30 days after the date of its publication. No petition for a referendum of the ordinance to the vote of the electors was ever filed with the city clerk; nor did the city council submit the question of the issuance of the bonds to a vote of the electors of the city and the ordinance did not provide therefor. In the aggregate amount levied for taxation for 1922, no sum was included for the payment of interest on the bonds to be issued under the ordinance mentioned. The bonds have not yet been printed, signed, negotiated for sale or sold, but defendant city and its officers threaten to so do. In this action, by a taxpayer against the city and its officers, the complaint sets out the foregoing facts in more detail, charges the ordinance to be void, and asks that the defendant be enjoined from printing, issuing and negotiating any bonds thereunder. A demurrer to the complaint was sustained and plaintiff appeals.

The ordinance recites as authority for its adoption section 55 of the city charter and chapter 304, p. 372, Laws 1921, and gives the form of the bonds containing the same recitals and that they are issued to defray the cost of acquiring a site, constructing and equipping a contagious hospital and are payable out of the sinking fund of the city of Duluth.

The position of the city is that section 55 of its charter authorizes the city council to issue bonds by ordinance "to purchase, construct, extend, improve and maintain public utility plants," and that a contagious hospital is such a plant. Plaintiff, on the other hand, contends that chapter 310, p. 445, Laws 1913, names public utilities and that a hospital is not among them. But, without considering the applicability of chapter 310, and assuming for the purposes of this decision only, since the court is divided on the question, a contagious hospital to be a utility plant within the meaning of section 55 of the charter, the city's position would not be well taken.

Wherever public utilities are referred to in the charter, it is plain that such utilities may neither be acquired nor disposed of without the vote of the electors approving the proposition. Section 72 of the charter, after enumerating what property and plants the city may acquire, such as "gas, water, heat, power, light, telephone or other plant, or other public utility," provides: "But no proceedings to acquire any such street railway system or other plant or utility shall be consummated unless the city has the money in its treasury to pay for the same or unless provision for paying for the property proposed to be acquired has been made by vote of the people." And section 77 forbids the leasing, sale or disposal of any public utility owned by the city, unless first submitted to the vote of its electors. Hence the natural conclusion is that, when the city of Duluth lacks the ready money for the acquisition of any public utility plant, such a plant cannot be acquired or constructed unless provision for payment therefor has been sanctioned by the vote of the people. That is, when bonds are to be issued to raise money for building or otherwise acquiring a public utility plant, the proposition must be submitted to and ratified by the electors of the city.

We find no authority in section 55, or in any other provision of the charter, for issuing bonds for a contagious hospital without first submitting the proposition to the electors and securing their approval at an election called for that purpose.

Of course the legislature may authorize the council of a municipality to issue bonds without submitting the proposition to a vote. Pike v. City of Marshall, 146 Minn. 143, 178 N. W. 1006. Section 1855, G. S. 1913, authorizes the governing body of a city to issue bonds for a hospital and other named objects to an amount that will not increase its net indebtedness beyond the limit fixed by law, "and a proposal so to do, if required by law, shall have been submitted to and approved by the voters thereof." But the preceding section 1854 provides that no bonds of any municipality, with two exceptions not here important, shall be issued without such approval of the electors first obtained. However, we may assume that chapter 304, p. 372, Laws 1921, was enacted for the purpose of modifying section 1854 and of enabling the city councils of the cities covered by the act to issue such bonds for a contagious hospital without first submitting the proposition to a vote, there being no specific direction in their home rule charters on the subject. We then face the question whether said chapter is valid.

The act is so drawn as to divide the three existing cities of the first class into two classes, placing Duluth and St. Paul under its operation, and excluding therefrom Minneapolis. Whether or not this classification is manifestly arbitrary as to legislation relating to the issuance of bonds in that it is based upon the nonexistence in the city of a board of estimate and taxation, need not be determined, for we reach the conclusion that the act violates sections 33 and 34, article 4, of the Constitution prohibiting special legislation. Section 1 of said chapter 304 provides that "the bonds authorized in this act shall be issued within six months after the passage of this act," and section 6 thereof "the powers granted in this act shall expire December 31, 1922." No city other than Duluth and St. Paul could possibly get into the created class within the time specified. It is not valid general legislation under section 36 of article 4 of the Constitution to thus close the door against future

cities whose growth might bring them into the class, except in cases where the purpose is curative or the relief temporary. Such exceptions are exemplified in State v. Cooley, 56 Minn. 540, 58 N. W. 150; Alexander v. City of Duluth, 77 Minn. 445, 80 N. W. 623; State v. Brown, 97 Minn. 402, 106 N. W. 477, 5 L. R. A. (N. S.) 327; Wall v. County of St. Louis, 105 Minn. 403, 117 N. W. 611.

But in the Wall case the present Chief Justice in dissenting called attention to the fact that later decisions referred to had detracted from the weight to be given State v. Cooley, supra. However, in Marwin v. Board of Auditorium Commrs. 140 Minn. 346, 168 N. W. 17, an act which limited its operation so that no city other than the one then designated could hope to come within its operation was held special legislation. And as to this obnoxious feature it can be of no importance whether one or two cities come within the present scope of the act. Justice Dibell there states: "It is well settled that a statute, to avoid being special, must be so framed as to include new members as they come into existence and must not be limited to the members of the class at the time of its enactment." Cases to the point are cited. In State v. Independent School District of Granite Falls, 143 Minn. 433, 174 N. W. 414, Justice Hallam says: "If the classification is a proper one and the statute is so framed as to apply automatically to other cities and villages as they may acquire the characteristics of the class, then the statute is general and not special." It is true that the act in question is temporary in that it speeds the issue of the bonds and the spending of the money and is remedial in that it supplies a present lack of money and a hospital. But the project authorized is permanent. A site will be acquired and a building constructed and equipped, all speedily; but it and its maintenance and use are permanent—not temporary. Under the authority of Marwin v. Board of Auditorium Commrs. supra, chapter 304, p. 372, Laws 1921, must be held invalid.

Under the views above expressed we do not reach many other questions presented by the appeal.

The order is reversed.