AUGUST J. KEMPIEN v. BOARD OF COUNTY COMMISSION-
ERS OF RAMSEY COUNTY AND OTHERS.[1]

June 20, 1924.

No. 24,107.

**Act authorizing issue of hospital bonds valid.**
1. Chapter 398, Laws of 1923, which provides that any county and
any city within such county, which furnish funds in proportionate
parts for the maintenance of a hospital, may issue bonds for enlarg-
ing the hospital, does not violate the constitutional provision pro-
hibiting special legislation, nor the provision permitting cities to
be classified on the basis of population.

**Act not void for uncertainty.**
2. The act specifies the proportionate part of the bonds for which
the county and city are respectively liable, and is not void for un-
certainty in failing to state whether they are to be issued severally
or jointly, for they must be issued severally in the absence of specific
authority to issue them jointly.

Action in the district court for Ramsey county to restrain the
city of St. Paul and the county of Ramsey from issuing hospital
bonds. From an order, Michael, J., denying his motion for a
temporary injunction and discharging the order to show cause,
plaintiff appealed. Affirmed.

*George L. Siegel,* for appellant.

*Harry H. Peterson,* County Attorney, *R. A. Macdonald,* Assistant
County Attorney, *Carlton F. McNally,* Corporation Counsel of St.
Paul, and *Lewis L. Anderson,* Assistant Corporation Counsel of St.
Paul, for respondents.

TAYLOR, C.

This appeal is from an order denying plaintiff's application for
a temporary injunction restraining the county of Ramsey and the

[1]Reported in 199 N. W. 442.

city of St. Paul from issuing the bonds authorized by chapter 398, p. 551, of the Laws of 1923 for the purpose of constructing at the hospital maintained by the county and city the additional buildings specified in that act.

Plaintiff contends: (1) That the act contravenes section 33 of article 4 of the Constitution prohibiting special legislation; (2) that it contravenes section 36 of the same article which provides that cities may be classified according to population; and (3) that the provisions of the act are so indefinite and ambiguous that it cannot be ascertained therefrom whether the county and city are authorized to issue the bonds jointly, or whether each is authorized to issue its proportionate part thereof in severalty.

1. Section 33, article 4, of the Constitution prohibits passing a special law when a general law can be made applicable, and specifically prohibits passing any special law regulating the affairs of counties or cities.

The statute in question provides in section 1:

"Any county, and any city within such county, which maintain a Board of Control by funds supplied in proportionate parts by any such county, and city within such county, may issue and sell certificates of indebtedness or bonds of such county and city within such county, in an amount not to exceed four hundred thousand ($400,000) dollars for the purpose of defraying the cost of erecting one building for the purpose of treating contagious and communicable diseases, 'and one building to be used as a chapel and auditorium,' in connection with any hospital maintained by such Board of Control."

Plaintiff contends that this act, although general in form, is special in fact, for the reason that the county of Ramsey and the city of St. Paul are the only county and city which come within its provisions, and further contends that authorizing a county and city "which maintain a board of control by funds supplied in proportionate parts by" such county and city, and no others, to issue bonds is making an arbitrary classification for which no natural or logical reason exists.

The city of St. Paul is within the county of Ramsey. The county and city now maintain, and for many years have maintained, a county and city hospital, through a joint board of control, by funds supplied in proportionate parts by each municipality. This is the situation to which the act applies. Although it may have been passed to enable the county of Ramsey and the city of St. Paul to enlarge their hospital, the act, nevertheless, is general in form and terms. Doubtless it might have been more happily worded; but, in substance, it provides that where a county, and a city which forms a part of the county, maintain a hospital through a board of control by funds furnished in proportionate parts by each, such county and city may issue bonds for the construction of the specified buildings. The fact that the county of Ramsey and the city of St. Paul may be the only county and city now maintaining such a hospital, through such a board by funds provided in that manner, does not bring the classification adopted by the act within the inhibition of the Constitution, for any county and city which shall, at any time, become similarly situated will automatically come within the class. Neither can we say that the classification adopted to accomplish the legislative purpose is arbitrary within the rules governing the courts in determining such questions. State v. Cooley, 56 Minn. 540, 58 N. W. 150; State ex rel. Flaten v. Independent School District, 142 Minn. 433, 174 N. W. 414; Roe v. City of Duluth, 153 Minn. 68, 189 N. W. 429; 6 R. C. L. 380, § 373. And see State v. Cloudy & Traverse, 159 Minn. 200, 189 N. W. 429.

2. The provision in section 36 of article 4 of the Constitution authorizing the legislature to classify cities on the basis of population does not debar the legislature from classifying them on a basis other than population. Lodoen v. City of Warren, 146 Minn. 181, 178 N. W. 741. The classification here involved has no reference to population and is not forbidden by section 36.

3. Plaintiff contends that the provisions of the act are so indefinite and ambiguous that it cannot be ascertained therefrom whether the legislature intended that the county and city should issue the bonds as their joint obligations, or that each should issue its proportionate part thereof as its separate obligations.

That there is ground for plaintiff's criticism cannot be denied. But such a statute is not to be defeated because it is imperfectly drawn. It must be assumed that the legislature intended to enact a valid and effective law. And the duty devolves upon the courts to ascertain the legislative purpose from a consideration of the act as a whole, and to interpret it, if possible, so that it will accomplish the intended purpose. To bring this about obvious mistakes and omissions may be corrected or supplied, and contradictory expressions and language of doubtful import should be given a meaning consistent with the legislative intention as disclosed by the act taken as a whole. State v. Chicago, M. & St. P. Ry. Co. 38 Minn. 281, 37 N. W. 782; State v. Board of County Commrs. of Polk County, 87 Minn. 325, 92 N. W. 216, 60 L. R. A. 161; State v. Bates, 96 Minn. 110, 104 N. W. 709, 113 Am. St. 612; State v. Reusswig, 110 Minn. 473, 126 N. W. 279; Alexander v. McInnis, 129 Minn. 165, 151 N. W. 899; State v. District Court of Ramsey County, 134 Minn. 131, 158 N. W. 131, 25 R. C. L. 967, § 222, Id. 978, § 228.

The authority to issue the bonds for the purpose specified, and the proportional part of the amount thereof for which the county and city are respectively to be liable is clear. Both county and city construe the act to mean that each may issue separately that portion of the bonds which represents its own liability, and each has authorized and directed the issuance of its proportionate part thereof on that theory.

It is to be borne in mind that municipalities cannot assume joint obligations whereby one becomes responsible for the liabilities or defaults of another without clear legislative authority therefor. The act nowhere expressly states whether the bonds are to be issued severally or jointly.

It is a reasonable inference from the act, taken as a whole, that the bonds are to be issued severally. The authority to issue them, given in section 1, is given only to a county and city which maintain a hospital through a board of control "by funds supplied in proportionate parts by any such county and city." Limiting the operation of the act to cases in which a county and city maintain

a hospital by funds furnished in proportionate parts by each, contemplates a situation in which each municipality acts independently and makes its contribution from its own funds.

Section 2 contains provisions in respect to the form and terms of the bonds, and provides that they may be issued whenever the board of county commissioners of the county and governing body of the city shall deem it advisable, but fails to specify whether they are to be issued jointly or severally.

Section 3 reads: .

"The county shall bear and pay two-thirds (2/3) and the city shall bear and pay one-third (1/3) of said bonds, so issued by the board of county commissioners and governing body thereof, respectively, and the board of county commissioners of such county, and the governing body of any such city, shall provide annually for the payment of such bonds and interest, and shall raise sufficient taxes therefor, and if any such board of county commissioners or the governing body of any such city shall fail to make provision in their annual tax levies for the payment and redemption of said bonds, with the interest thereon, as the same become due and payable, the county auditor of any such county shall add to the amount of taxes to be raised by any such county or city an amount sufficient to provide for the payment and redemption of any such bonds with interest due thereon."

This section is not a model of clearness, but it provides that the county shall bear and pay two-thirds and the city one-third of the bonds issued by the county and city, *respectively*, and that, in case either shall fail to levy the necessary annual tax for the payment of the bonds, the county auditor shall add the requisite amount to the taxes of such county or city. These provisions can be more easily harmonized with the theory that the liability of the two municipalities is several than with the theory that their liability is joint.

Bearing in mind that granting authority to two or more municipalities to issue bonds does not carry with it authority to issue joint bonds unless authority to issue them jointly is specifically

given, we reach the conclusion that under this act the county and city may each issue its proportionate part of the bonds separately.

Defendants call attention to the fact that the hospital in question was constructed and is being maintained under special laws enacted long before the adoption of the constitutional amendment prohibiting such legislation; that the original act, approved February 29, 1872, provided that the county should issue bonds in the sum of $30,000 and the city in the sum of $15,000 for the construction of the original buildings; that the county should own an undivided two-thirds and the city an undivided one-third of the property; that the county should pay two-thirds and the city one-third of all expense "out of their respective treasuries;" that the hospital should be under the control of three directors, two to be elected by the county and one by the city; and that the various acts amending and supplementing this act recognize and continue the requirement that the necessary funds shall be furnished separately by the county and city in the proportions above specified.

The argument drawn from these provisions loses much of its force by reason of the fact that such conditions can no longer be created by special legislation, and that the Constitution (article 4, § 33), forbids amending, modifying or extending special laws. The validity of the present act must rest upon the fact that it is a general law applicable to any similar situation which may arise under general laws now or hereafter enacted.

Order affirmed.