R. L. GIFFIN, SR. v. VILLAGE OF HIBBING AND OTHERS.[1]

October 18, 1929.

No. 27,754.

 

*I. R. Galob,* for appellant.

*John T. Naughtin, George D. Reed* and *Washburn, Bailey & Mitchell,* for respondents.

HILTON, J.

Action by plaintiff, a resident and taxpayer of defendant village, brought in behalf of himself and all other taxpayers of the village, to enjoin the village and the officers thereof from receiving bids for the sale of and from selling certain village bonds. After making findings of fact, the court made the following conclusions of law:

"1. That Chapter 208 of the Laws of Minnesota for the year 1929 is constitutional.

"2. That the indebtedness of said village outstanding on January 1, 1929, consisting of accounts payable and warrants issued, which with interest computed to July 15, 1929, amounts to the sum of $2,737,000.00, is valid.

"3. That plaintiff's cause of action be dismissed."

Judgment was accordingly entered, and this appeal is from the same.

[1]Reported in 227 N. W. 41.

The village of Hibbing is a Minnesota municipal corporation with a population of 15,089, according to the federal census of 1920; and 16,632 and 17,112 according to the special censuses of 1923 and 1924, respectively. Its assessed valuations were in 1924, $90,729,154; 1926, $85,142,222; 1928, $77,003,177. For the year of 1928 the tax levied in Hibbing exceeded $100 per capita of the population as defined by L. 1921, p. 646, c. 417, commonly known as the per capita tax law.

The property producing the greater part of said valuations was and for many years had been iron ore, which is assessed at a higher rate than other classes of property. Such ore is being rapidly mined out, which fact accounts for the steady reduction in valuation. Defendant village has for many years been levying and expending more than $1,500,000 per year, and its outstanding indebtedness has from year to year continued to increase. Said levy, expenditure, and indebtedness were in a large measure due to the peculiar circumstances existing in mining communities and to the temporary conditions caused by mining operation during said time. On account of mining operations it has been necessary to vacate and abandon a large part of said village and public works and improvements therein and to rebuild and replace said improvements on a new site, all of which necessitated the expenditure of large sums of money. After the passage of the "per capita tax law," bonds were issued to take up the so-called existing indebtedness referred to therein, and in 1929 there remained unpaid on said bonds and other bonds thereafter issued with interest thereon approximately $1,800,000, and there still remained an outstanding indebtedness over and above said bonds of $2,737,000. The situation last referred to involved the village in paying interest covering many years on outstanding bonds and obligations, approximating $250,000 annually, notwithstanding the great decrease in its assessed valuation. Other villages on the iron range in Minnesota are in a situation of a like nature with that of defendant village. L. 1929, p. 207, c. 208, was enacted to solve the urgent situation referred to and to place the villages coming under its terms on a cash basis.

If valid it will accomplish that purpose. The desirability, if not the absolute necessity, of such a result is most apparent.

Pursuant to said c. 208, which authorized the issuance and sale of bonds to take up outstanding accounts and warrants issued prior to January, 1929, with interest to July 15, 1929, the village council adopted a proper resolution on June 25, 1929, authorizing issuance of bonds in the sum of $2,737,000. Said bonds pursuant to the resolution were properly offered for sale and no satisfactory bid was received. On July 15 another resolution was adopted rejecting said bids, and on July 30 a further proper resolution was adopted providing for a call for further bids for the purchase of said bonds. There was most justifiably a pronounced sentiment in favor of reducing the per capita tax levy. Such a reduction, however, without legislation along the lines of c. 208, would work havoc in the whole financial structure and create an unbearable situation; hence the enactment of cc. 206 and 208, the former making a gradual reduction so that in 1933 and years following the per capita tax will be but $70. Further details as to the desire and purpose of the village authorities and taxpayers, legislative committees and others to solve the situation, are recited in the findings of fact and undoubtedly clearly state the situation. The legislation, L. 1929, cc. 206 and 208 (companion laws), are found by the court to be and undoubtedly are remedial and take care of the situation that under the circumstances cannot possibly be called other than temporary.

The complaint alleges on information and belief that a large number of the warrants and accounts included in the unpaid indebtedness of $2,737,000 were not incurred by proper authority and are invalid and not the valid indebtedness of the village. No evidence was offered by plaintiff in this regard; plaintiff withdrew that contention. The uncontradicted evidence on behalf of the defendants showed and the court properly found that the indebtedness in question was valid. The only assignment of error is that the court erred in holding that said c. 208 was constitutional.

Plaintiff contends that the law here involved violates art. 4, §§ 33 and 34, of the state constitution. These sections are:

"§ 33. In all cases when a general law can be made applicable no special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, * * *. The legislature shall pass no local or special law regulating the affairs of, * * * city, village," etc.

"§ 34. The legislature shall provide general laws for the transaction of any business that may be prohibited by section one of this amendment, and all such laws shall be uniform in their operation throughout the state."

The title of c. 208 is:

"An act regulating the issuance of orders or warrants in all cities and villages in the State of Minnesota wherein the tax levy for the year 1928 exceeded $100.00 per capita of population; providing for the issuance of bonds to pay indebtedness existing January 1, 1929; providing for the issuance of certificates of indebtedness; limiting the creation of floating indebtedness; and creating liability of municipal officers for violations thereof."

Section 1 reads:

"That from and after January 1, 1930, no city or village in the State of Minnesota wherein the tax levied in the year 1928 exceeded $100.00 per capita of the population, as defined by Chapter 417, General Laws 1921, shall draw any order or warrant on any fund until there is sufficient money in such fund to pay the same, together with all orders previously issued against said fund."

Sections 2, 3 and 4 prohibit the creating of certain indebtedness, confine expenditures to strict limits and authorize the sale of certificates of indebtedness in certain instances only. The operation of these sections will effectuate the purpose of placing the municipalities on a cash basis and prevent a recurrence of the unfortunate situation in which the municipalities then were.

Section 5 reads as follows:

"For the purpose only of paying and discharging its valid indebtedness (except bonds) which existed January 1, 1929, and interest thereon until paid, such city or village may issue its bonds in

the manner now provided by law, except that such bonds may be issued on a vote of the council thereof without a vote of the electors; provided that if any moneys received from the taxes levied in 1928 and payable in 1929 or income from local sources received since January 1, 1929, have been used prior to the passage of this act for the retirement of indebtedness existing January 1, 1929, such bond issue may include the amount of such payments for the purpose of reimbursing the funds from which such moneys were so paid."

In order that this act may stand the constitutional test the classification must be reasonable and germane to the purpose of the act; it must be remedial and temporary and also uniform, not optional, and apply to all members of the classification. Tested by these requirements, we think the law is constitutional.

It is true the law applies but to few villages. This does not make it unconstitutional if there are conditions justifying such legislation and a reasonable distinction exists necessitating the same. The presumption maintains that this law is constitutional; that the circumstances and conditions therein specified furnish a proper and sufficient basis for the classification. The basis of the classification is not arbitrary or illusory. It is justified by a natural reason suggested by necessity. In Driscoll v. Commrs. of Ramsey County, 161 Minn. 494, 497, 201 N. W. 945, 946, it is stated:

"It is only when the classification is so manifestly arbitrary as to evince a legislative purpose of evading the provisions of the constitution that the courts may and must declare the classification unconstitutional."

The act is remedial and temporary. A bare reading of the act itself and a cursory consideration of the facts disclosed must be convincing to the most skeptical that this legislation does not come within the prohibition of the constitution, and that the classification is germane to the subject matter. So tested the law is good. Ample authority for this conclusion is found in Thorpe Bros. Inc. v. County of Itasca, 171 Minn. 312, 213 N. W. 914; Driscoll v. Commrs. of Ramsey County, 161 Minn. 494, 201 N. W. 945; State v. Delaware

I. Co. 160 Minn. 382, 200 N. W. 475; State v. Cloudy & Traverse, 159 Minn. 200, 198 N. W. 457; Calderwood v. Schlitz Brg. Co. 107 Minn. 465, 121 N. W. 221; Farwell v. City of Minneapolis, 105 Minn. 178, 117 N. W. 422; State ex rel. Bd. of Ed. v. Brown, 97 Minn. 402, 106 N. W. 477, 5 L.R.A.(N.S.) 327; Alexander v. City of Duluth, 77 Minn. 445, 80 N. W. 623; State ex rel. Anderson v. Sullivan, 72 Minn. 126, 75 N. W. 8; State ex rel. Bd. of C. & C. H. Commrs. v. Cooley, 56 Minn. 540, 58 N. W. 150; 1 Dunnell, Minn. Dig. (2 ed.) § 1678, et seq. and cases cited.

We have carefully examined the cases cited by plaintiff and find that they are distinguishable from this case. Both on reason and authority the trial court held c. 208 constitutional, and the judgment appealed from is affirmed.

Affirmed.