## COUNTY BOARD OF EDUCATION FOR UNORGANIZED TERRITORY OF ST. LOUIS COUNTY v. WALTER H. BORGEN AND OTHERS. JOHN E. BENSON, APPELLANT.[1]

February 23, 1935.

No. 30,395.

[1]Reported in 259 N. W. 67.

526

See 192 Minn. 512; 257 N. W. 92.

*Clarence O. Tormoen,* for appellant.

*Charles E. Adams,* for respondent County Board of Education for Unorganized Territory of St. Louis County.

*Harry H. Peterson,* Attorney General, *Frederic A. Pike,* Deputy Attorney General, and *David J. Erickson,* Assistant Attorney General, for respondent Harry H. Peterson, Attorney General.

*Thomas J. Naylor, County Attorney,* for respondent Walter H. Borgen, County Auditor.

HILTON, JUSTICE.

Appeal by John E. Benson, a taxpayer, from a declaratory judgment entered in the trial court adjudging, in accordance with its conclusions of law, that Ex. Sess. L. 1933-1934, c. 45, Mason Minn. St. 1934 Supp. §§ 2867, 2867-1, was intended to be and is remedial in nature and intended to meet a temporary situation existing in the state of Minnesota and that the purposes of said act are not primarily permanent, that the classification provided in said law is germane to the objects and purposes of said act; and that said law is constitutional and is authority for the county board of education for unorganized territory of St. Louis county to issue the bonds of said unorganized territory in the manner and for the purposes and within the limits specified in said law, not in excess of 12½ per cent of the total assessed value of all real and personal property,

including money and credits, in said unorganized territory of said county.

The case has been here before, and the facts are set out fully in an opinion filed November 9, 1934 (County Board of Education v. Borgen, 192 Minn. 512, 257 N. W. 92), and we deem it unnecessary again to recite them here. In that decision there was a reversal because it appeared that there was no controversy either in the trial court or here—no adverse party.

The purpose of these proceedings is to obtain a construction as to the constitutionality of Ex. Sess. L. 1933-1934, c. 45, which amended 1 Mason Minn. St. 1927, § 2867, as amended by L. 1933, c. 431. The act as now amended authorizes the board of education of an unorganized territory having an assessed valuation of all taxable real and personal property, including money and credits, of more than $3,000,000, and having at any time an area of more than 3,500 square miles, to issue and sell the bonds of such unorganized territory for the purpose of providing school sites and school buildings, funding or refunding any floating indebtedness or bonds, not exceeding 12½ per cent of the assessed valuation of the unorganized territory, and not exceeding $350,000 in the aggregate of such bonds. The act before the amendment made by the special session directed that the sale of the bonds be made in accordance with 1 Mason Minn. St. 1927, § 1943. In addition to the method of sale prescribed by that section, the amendment authorized the sale of the bonds "by contracting with the United States Government for the purchase of said bonds without calling for bids therefor," and required that notice be given the electors of the unorganized school district of the proposal to issue the bonds, the amount thereof, the rate of interest, the purpose for which the proceeds of such bonds would be used, and other information, and including a requirement that any electors having objections appear and show cause why such bonds should not be authorized and sold. Section 2 of the act (and it is the portion of that section italicized below that furnishes the main ground for the contention that the act is unconstitutional), provides:

"All Acts and parts of Acts inconsistent with the provisions of this Act are hereby repealed in so far, and only in so far, as necessary to give effect to this Act; providing however, that nothing in this Act shall be construed to permit the issuance and sale of bonds for any purpose whatsoever without a prior vote of the electors *except upon the projects for which application has been made in writing to the Public Works Administration or to any other agency of the United States Government, and which application shall have been filed with such agency on or before January 1, 1934.*"

It appears that the limitation as to time was made in order to conform to the then federal limitation with respect to applications for relief made to the Public Works Administration, or other agency of the United States. The time in which applications for relief might be made had in fact terminated five days before the act in question became effective. Shortly after the enactment of c. 45, the federal government extended the time within which applications to it might be made.

Appellant contends that the statute is local and special legislation, prohibited by Minn. Const. art. 4, § 33, which provides:

"In all cases when a general law can be made applicable no special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined without regard to any legislative assertion on that subject. The legislature shall pass no local or special law regulating the affairs of, or incorporating, erecting or changing the lines of any county, * * * regulating the management of public schools, the building or repairing of schoolhouses, and the raising of money for such purposes; * * *."

That the unorganized territory of St. Louis county was the only such territory to avail itself of relief aid offered by the federal government by making application therefor, and so the only one coming within the class created by the statute, does not affect the situation. A law is general which applies to and operates uniformly upon all members of any class of persons, places, or things requiring legislation peculiar to itself, notwithstanding it operates

only upon a single object or upon only one member of a class. State ex rel. Board of Courthouse & C. H. Commrs. v. Cooley, 56 Minn. 540, 58 N. W. 150; Board of Education v. Borgen, 192 Minn. 367, 256 N. W. 894; 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 1679, note 38; 1 Lewis' Sutherland, Stat. Const. (2 ed.) p. 353, § 196.

■ Area of 3,500 square miles, assessed valuation of $3,000,000 or more, are factors suggesting the propriety of different legisla-tion with respect to the members of the different classes. An unor-ganized territory having such a large area could be found only in rural, sparsely settled sections of the state. It is readily apparent that such an extensive territory, with small proportionate revenue received from taxation, would be, in these trying times, in a less satisfactory financial condition than a smaller, more compact terri-tory. Such classification is sufficiently germane to the purpose and object of the act to make it constitutional. Minn. Const. art. 4, § 33. State v. Cloudy & Traverse, 159 Minn. 200, 198 N. W. 457; Thorpe Bros. Inc. v. County of Itasca, 171 Minn. 312, 213 N. W. 914, 915; 1 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 1681.

■ The claim is made that the statute is unconstitutional because the classification is based upon existing conditions and does not per-mit unorganized territories later qualifying to come into the class. Appellant invokes the general rule that, "An act, to avoid being special legislation, must be so framed as to include new members as they come into existence and not limited to the members of the class at the time of its enactment." State ex rel. County of Henne-pin v. Erickson, 160 Minn. 510, 513, 200 N. W. 813, 814; Marwin v. Board of Auditorium Commrs. 140 Minn. 346, 168 N. W. 17; Roe v. City of Duluth, 153 Minn. 68, 189 N. W. 429; State ex rel. Hilton v. Independent ˙ Sch. Dist. No. 1, 164 Minn. 66, 204 N. W. 572. There is an exception to the general rule, however, that is as well established in this state as the rule itself. In Thorpe Bros. Inc. v. County of Itasca, 171 Minn. 312, 315, 213 N. W. 914, it is stated:

"The general rule is settled that a classification is bad which does not permit others later having like qualifications to enter. It is just as well settled that a valid classification may be based upon

existing circumstances and limited to members of a class existing at the time of its enactment when the purpose is remedial and to meet a temporary situation."

In Alexander v. City of Duluth, 77 Minn. 445, 80 N. W. 623, 624, it is said:

"The rule is well settled that classification with a view to the enactment of general laws must not be based upon existing circumstances only or those of limited duration, except where the object of the law is itself a temporary one. The exception to the rule is as firmly established as the rule itself, and a distinctive class may be based upon existing conditions, when the purposes of the law are temporary only. [Citing cases.] But not all existing conditions are a proper basis of classification, although the purpose sought be temporary. They must be of such a character as suggests a practical (not absolute) necessity or propriety of different legislation with respect to the subjects placed in different classes. * * * The origin or cause, however, of the existing conditions, whether it be unforeseen disaster or official incompetency, goes not to the power of the legislature to make them the basis of classification, but to the propriety of doing so."

Other cases recognizing and applying this rule are State ex rel. Board of Courthouse & C. H. Commrs. v. Cooley, 56 Minn. 540, 58 N. W. 150; Wall v. County of St. Louis, 105 Minn. 403, 117 N. W. 611; Giffin v. Village of Hibbing, 178 Minn. 337, 227 N. W. 41; 1 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 1684.

The requirement that an application must have been made to the federal government before January 1, 1934, does not close the classification in so far as the sale of bonds to the United States government is concerned, the main and important object of the act. The only distinction is that such territories as had made application for relief on or prior to January 1, 1934, need not hold an election and obtain the approval of the electors, whereas those making such application after that date must hold such election. A line of demarcation is thus drawn between the two classes with respect to the necessity of an election. The legislature undoubted-

ly had in mind the financial conditions, both state and national, existing at the time of the passage of c. 45, as expressed by it in L. 1933, c. 339 (mortgage moratorium law) and as recognized by this court and the United States Supreme Court. State ex rel. Lichtscheidl v. Moeller, 189 Minn. 412, 249 N. W. 330; Blaisdell v. Home B. & L. Assn. 189 Minn. 422, 249 N. W. 334, 86 A. L. R. 1507; affirmed 290 U. S. 398, 54 S. Ct. 231, 78 L. ed. 255, 88 A. L. R. 1481; State ex rel. Standard Inv. Co. v. Erickson, 191 Minn. 188, 253 N. W. 529. The federal congress has also acted upon the universally known critical situation by the enactment of the National Industrial Recovery Act and other remedial legislation. Members of the legislature come from all parts of the state. Presumably it is aware of the financial conditions existing in unorganized territories having an area and assessed valuation as designated. The legislature is presumed to have full information of the facts material to the classification it adopts. 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 1678. The existing conditions, as found by the trial court, with respect to the territory here concerned, are:

"That at the present time there are 77 different school buildings and schools maintained under the general supervision of said County Board of Education for Unorganized Territory, and approximately 4,300 school children of compulsory school age are furnished school facilities in said school buildings and by said schools, and a real and urgent necessity now exists throughout the said Unorganized Territory for the construction of said school buildings hereinbefore referred to and for the furnishing of employment and relief of various kinds of employment on said public works to the unemployed within said Unorganized Territory."

The trial court further found substantially as follows: That two applications were made by respondent to the Public Works Administrator for the purpose of constructing and improving school buildings; for the furnishing of necessary school facilities for the people and children of school age residing within the territory; and for the purpose of furnishing employment to unemployed artisans and workmen who might be engaged in the construction of school

buildings in the territory; that the applications were approved by the Public Works Administrator in the sum of $178,000; that relying on such approval the county board of education proceeded to carry out its part of the undertaking, employed architects for the preparation of plans and specifications for said school buildings, called for and received proposals for the erection of one school building, and adopted resolutions authorizing the issuance and sale of bonds to the United States in the total sum of $140,000.

The legislature, by setting aside the necessity for holding an election, apparently desired to make it possible for such territories as had a "real and urgent necessity" not only for school buildings, but for the employment and relief of the unemployed, speedily to obtain that relief. An election throughout such a large territory would necessarily take considerable time and also involve an expense which it could ill afford. But at the same time it did not intend to toss aside for all time the requirement of an election by the people. Under the circumstances, it was within legislative discretion to limit the right to issue and sell bonds to the United States government, without an election, to such territories as applied for relief within the time specified. Thorpe Bros. Inc. v. County of Itasca, 171 Minn. 312, 213 N. W. 914; Alexander v. City of Duluth, 77 Minn. 445, 80 N. W. 623.

Appellant asserts that the instant case is controlled by the decision in Roe v. City of Duluth, 153 Minn. 68, 189 N. W. 429, and other similar cases, hereinbefore cited. If the result here sought was nothing more than the acquisition of sites and the construction of buildings (as it was in the Roe case), undoubtedly the holdings in those cases would govern the decision here. But such is not the case. Here the construction of the contemplated school buildings is but a means by which a very unsatisfactory condition is sought to be cured or alleviated. The circumstance that one result of the sale of the bonds would be the acquiring of needed school buildings is not of moment; it is not the primary purpose; it is but incidental. That needed school buildings will be acquired and something tangible obtained is fortunate but not in any way affecting the accomplishment of the main purpose. The amendment

was clearly remedial legislation enacted for a temporary purpose, and as such is constitutional.

Affirmed.

